## No. 9688.

### Mrs. Kate S. Kent and Husband vs. Brown & Learned.

In testing the validity of sales for taxes, the courts of this State are guided by the same rules which prevail in judicial sales.

A monition which relates to informalities in the decrees under which judicial sales are made. and to irregular and defective proceedings connected with the sales, will cure the same defects which are reached and set at rest by the prescription of five years under the provisions of Art. 3543, Civil Code, and both remedies may be invoked to cure informalities in the assessment and in the sale for taxes.

In an assessment not absolutely void, a monition will cure a defect in the description of the property, in listing the same on the resident instead of non-resident rolls, an omission to extend State and parish taxes on separate assessment rolls, and other errors not necessarily fatal to the assessment.

A complaint that the taxes for which property was sold are excessive, comes too late after

the sale is completed; it may be a good ground for an injunction but not for a suit in nullity.

A judgment rendered by a court of competent jurisdiction imparts absolute verity, and has the force of the thing adjudged until set aside in a direct action of nullity; it cannot be attacked collaterally.

APPEAL from the Ninth District Court, Parish of Concordia. *Young*, J.

*Dagg & Mason* and *Montgomery & Ransdell* for Plaintiffs and Appellants:

The tax title pleaded by defendants is void for the following reasons:

1st. There was no sufficient description of the property. R. S. §§ 3266, 3272; Act 42 of 1871, sec. 32; Bur. 380–1; Blk on Tax Titles, pp. 136, 137 (a) 148; 13 L. 210; 6 Ann. 542; 8 Ann. 19; 9 Ann. 540; 32 Ann. 235; 33 Ann. 556, 1164; 37 Ann. 61.

2d. The rolls were not signed and sworn to by the tax collectors and board of assessors, as required by law. R. S. §§ 3274, 3278; Acts 1871, No. 42, sec. 39, Blackwell, 122-3-4-9, 281; Burroughs, 274, 296; 9 Neb. 397; 6 Neb. 236; 33 Ann. 1165-6.

3d. The assessment in 1867 was in name of Geo. F. Sanderson instead of estate of G. F. Sanderson. See 23 Ann. 526; 35 Ann. 1086; Blackwell, pp. 150, 280.

4th. The property was placed on resident, when it should have been placed on non-resident roll. R. S. § 3251; Acts 1870. No. 23, §§ 19-32; Acts 1871, No. 42, § 18; Cooley, 277; Blk. 159-60; 34 Ann. 126.

5th. No parish taxes were extended on assessment rolls as required by Acts 1870, § 44. Nor were there any separate rolls as required by Act 42, sec. 43, of 1871; 34 Ann. 126.

6th. The parish taxes for the years 1870, 1871 and 1872 were illegal, being in excess of the State tax. 34 Ann. 126, and authorities there cited.

7th. The tax title shows that the property was sold to pay taxes which the assessment rolls and the delinquent lists, as recorded in the mortgage books, did not show to be due.

8th. A portion of the taxes for which the property was sold appear to have been paid.

9th. Lands sold at tax sale, under Act 47 of 1873, should not have been divided into lots.

The judgment is void for the following reasons:

1st. The Carroll court was without jurisdiction to appoint Mrs. Sanderson tutrix, as she, at the time, was a resident of New Orleans, C. C. 307, 335; C. P. 944, 948-9-50; 2 Ann. 71. The nullity appears on the face of the proceedings. 32 Ann. 891; see also Cooley's Con. Lim. 503 (407); 11 How. 437.

2d. If legally appointed, Mrs. S. had forfeited her tutorship by marrying again without provoking a family meeting. C. C. 254; 3 M. 346; 5 Ann. 596; 32 Ann. 51.

3d. The co-tutor was not a party to the judgment.

4th. The Carroll court was without jurisdiction *ratione personæ* to render judgment. The consent of the tutor does not give the court jurisdiction over the minor. C. P. 91.

5th. The judgment was by confession. The attorney who gave the confession was without authority from the tutrix. 29 Ann. 600; 6 Ann. 115; 3 L. 203; 7 Ann. 440. The tutrix herself could not have given the confession. 15 Ann. 226; 31 Ann, 389; 32 Ann. 906.

6th. The interests of the tutrix and her ward were in conflict. The latter should have been represented by an under tutor. C. C. 275; 2 L. 142; 11 R. 120; 21 Ann. 712; 23 Ann. 617.

*Percy Roberts, Hiram R. Steele* and *J. N. Luce* for Defendants and Warrantors.

*Miller & Finney, Conner & Conner* and *W. T. Martin* for the Citizens' Bank, one of the Warrantors:

The judgment of a court of competent jurisdiction appointing a tutrix cannot be attacked collaterally. Irregularities in the constitution of a family meeting cannot be urged collaterally against the appointment of a tutrix made by decree of a competent court in

pursuance of authority conferred by a family meeting.    36 Ann. 831;   35 Ann. 592;   32 Ann. 955, 398, *et passim.*

Where there is no administrator appointed, a tutor has the right to stand in court in a suit brought to enforce a debt against the succession.   36 Ann. 744; 35 Ann. 296, 591, 826, *et passim.*

A tax title based upon a proper assessment conveys a valid title.   37 Ann. 357; 35 Ann. 894; 32 Ann. 707; 31 Ann 662.

If a tax title can be set aside at all, the owner thus dispossessed will be entitled to be maintained in all the rights he may have against the succession of the owner of the property. 32 Ann. 295, 296; 31 Ann. 839.

The opinion of the Court was delivered by

POCHÉ, J.   Plaintiff, as the sole heir of her deceased father, G. F. Sanderson, claims ownership of the "Panola" plantation, in the parish of Concordia, which was the property of her father at the time of his death, in 1863, and which is alleged to be now in the possession in bad faith of the defendants, as owners thereof.

The defendants claim title to the property by right of purchase from W. A. Peale for three-fifths, and from the Citizens' Bank, and Mrs. Georgia Miller Smith for one-fifth each, and they call their vendors in warranty.

The warrantors, defending the title of their vendees, claim to derive their former ownership from a tax sale of the property made in December, 1873.

In amended pleadings the defendants set up a judgment which they hold by transfer from W. A. Peale, against the succession of G. F. Sanderson in the sum of $38,628.01, with interest of 8 per cent per annum from January 1, 1867, until paid, subject to a credit of $15,000 of that date, for which they claim judgment in reconvention against plaintiff, as the sole heir of her father, whose succession she has accepted.

Alleging their possession in good faith, they also claim reimbursement of the sum of $9722 on account of taxes on the property paid by them, and for valuable improvements placed thereon by them, during their possession thereof, in case of eviction.

On trial plaintiff assailed the tax sale as a nullity by reason of numerous illegalities and irregularities, both in the assessment and in the sale for taxes, and she also urged the nullity of the judgment against her father's succession on innumerable grounds to be hereinafter considered.

After plaintiff had developed her attack of the tax sale as a nullity, the defendants and warrantors pleaded the exception of *res adjudicata* in bar thereof, resting on a judgment rendered by the district court of Concordia on the 24th of November, 1874, confirming and homologat-

ing said tax sale, in conformity with monition proceedings which had been previously instituted and published, according to law, by the purchaser at said tax sale.

The district judge declared the sale to be null, but recognizing the validity and binding force of the judgment pleaded in reconvention by the defendants, which he considered to be in excess of the real cash value of the property in suit, he refused to adjudicate the nullity which he declared to have been established by the law and the evidence of the case, and he rendered judgment in favor of the defendants rejecting plaintiff's demand for the ownership of the property.

Plaintiff has appealed, and defendants pray for an amendment looking to a formal recognition of their title.

The grounds of nullity alleged against the tax sale are as follows:

1st.   That the assessments for the years 1867 to 1872 inclusively, for which years' taxes the property was sold, is invalid, because the assessment rolls for those years are not properly signed, sworn to or filed.

2d.   That the assessment for 1867 is invalid because the property for that year is assessed to George F. Sanderson, and not to his succession.

3d.   That the description of the property in 1867 as "Panola" is insufficient.

4th.   That the property is assessed for all of the above years on the resident portion of the rolls.

5th.   That all the taxes, State and parish, are not extended on the assessment rolls.

6th.   That during the years 1871 and 1872 State and parish taxes are not extended on separate assessment rolls.

7th.   That the tax for general parish purposes is in excess of four mills for the years 1869, 1870, 1871 and 1872.

8th.   That the taxes for which the property was sold, according to the tax deed, do not correspond in amount with the taxes as shown by the assessment rolls, delinquent lists and recorded delinquent lists.

9th.   That proper notices of the sale were not given.

## I.

In support of the first ground of nullity, plaintiff introduced in evidence, over defendants' objection, certain assessment rolls which had been found in the recorder's office, several of which are open to the objections contained in that ground.

Defendants' counsel then introduced in evidence certificates from the Auditor's office, showing the existence in that office of assessment rolls

for the same years, which were in form, and they offered testimony to show that the rolls relied on by plaintiff were not those on which the tax collectors had acted, and that the correct rolls, which were triplicates of those found in the Auditor's office, were missing from the recorder's office of Concordia. From the preponderance of the evidence, and in consideration of the legal presumption that the officer had done his duty, we conclude that defendants' contention is correct; and that the genuine rolls originally left in possession of the recorder, if produced, would have agreed in their tenor, signature and recitals with the triplicate copies now on file, as returned in each consecutive year, in the Auditor's office.

This presumption is more than confirmed by our knowledge of the conscientious ability of the attorneys, Mayo and Spencer, who, as counsel for the Citizens' Bank, Peale and Miller, warrantors herein, and at that time judgment creditors of the succession of Sanderson, conducted all the proceedings which resulted in the tax sale now under consideration. We must decline to accept the theory which rests on the supposition that these attorneys would have risked the funds of their clients, amounting to $5,564 56, the amount of their bid at the sale, on the faith of proceedings which lacked the foundation prescribed by law.

## II.

The main question presented by the second ground of nullity involves the existence of any information in the records of Concordia touching the death of Sanderson, when the assessor made the rolls for the year 1867.

We gather from the record that his domicile was in the parish of Carroll, several hundred miles above the parish seat of Concordia, and that he died in the State of Georgia in the year 1863, his own wife being unable to give the precise date or month when his death occurred, and that his succession was opened only in the year 1866, in Carroll.

We must take judicial cognizance of the state of war in which the country was then engaged, of the closing of the courts during several years, of the difficulty, and at times, of the impossibility of communicating between the parishes of Concordia and Carroll, and from the record it appears that no positive information could be had from the records of Concordia of the whereabouts of Geo. F. Sanderson, or of the fact as to whether he was dead or alive. From the only sources of knowledge within the reach of the assessor, he had no alternative but to list the property in the name of that owner, to whom it had been

assessed, and who had paid the taxes thereon for years past. Those circumstances, which are entitled to great weight, entirely remove this question from the rule or scope of the two decisions mainly relied on by plaintiff's counsel.

In Stafford's case, 33 Ann. 520, it was in proof that when the assessor listed the property in the name of "L. A. Stafford," he had been officially informed of his death by the very persons to whom he had sent notices of assessment as the agents of L. A. Stafford.

In Hickman's case, 35 Ann. 1086, the record showed that the property had never been assessed in the true owner's name, Mrs. Marie Emma Blanchard, from the time she had acquired it in 1860, to the time when it was sold for taxes in 1872, as the property of Mrs. E. A. Blanchard.

The correct solution of that point is confirmed by the case of Congreve et al. vs. City of New Orleans, 33 Ann. 816, in which it was contended that the assessment of property to the "Estate of Mrs. R. Jennings," when it should have been assessed to her heirs, who had been put in possession of the property as such, was a fatal error. The Court held that, as there was no proof of such transfer in the records of the parish where the property was situated, there was no irregularity in the assessment. See also, 28 Ann. 240, City of New Orleans vs. Ferguson.

### III, V, VI, VIII.

The discussion of the errors charged in the objections numbered 3, 5, 6 and 8, can be properly considered and disposed of under one subdivision of the subject.

In our opinion, these few grounds present questions of relative nullities, and not matters of substance or radical defects.

Hence, we conclude that these errors, if shown to exist, would be covered by the prescription of five years, and that they have been corrected by the judgment of the court on the monition applied for by the purchasers at the tax sale.

Under our discussion of the first two grounds of nullity, urged by plaintiff, and in our disposition hereinafter of the seventh ground, we think that the conclusion is justifiable that the assessment is not radically defective.

Now, the record shows that the property in suit has been designated and known as the "Panola" plantation, in the parish of Concordia, for more than forty years; hence, it follows that the description, although defective under the requirements of the law, was sufficient in fact to inform any and all parties in interest of the nature and locality of

the property thus listed on the assessment rolls, especially as this defect occurs in only one year.

The same considerations are amply sufficient to dispose of the objections that the State and parish taxes were not extended on the assessment rolls, and that the same for the years 1871 and 1872 are not extended on separate assessment rolls, and further, that the taxes, as shown by the assessment rolls, do not correspond with the taxes as stated in the tax deed.

These several errors amount, at most, to clerical omissions and neglects of prescribed calculations, but surely they cannot be held as fatal to the whole assessment or to the sale made thereunder.

Our jurisprudence has crystalized the rule that the validity of tax titles is to be tested under the same principals as judicial sales. 30 Ann. 1235, Jurey & Gillis vs. Allison et al. ; 37 Ann. 419, Giddens vs. Mobley ; 38 Ann. —, Barrow et al. vs. Wilson et al., not yet reported.

Now, it has been frequently held that defective descriptions of property, and other errors of form or of proceeding, otherwise fatal to a judicial sale, are cured by the prescription of five years. (C. C., art. 3543.)

In the case of Holt vs. Board, etc., 33 Ann. 673, it was decided that the failure to serve on the defendant notice of a judgment by default rendered against him, was an informality, grievous though it was, which had been cured by the prescription of five years.

In the case of Walling's Heirs vs. Morefield, 33 Ann. 1175, the same disposition was made of an informality growing out of a description held to be insufficient for vagueness. See also Fraser vs. Zyliez, 29 Ann. 535; Pasiance vs. Powell, 21 Ann. 584; Chambers vs. Wortham, 7 Ann. 113.

Now, the avowed object of the legislation which created the remedy of monition was to cure at once, and without the lapse of time required by the term of prescription provided for in Article 3543 of the Civil Code, the same informalities or defects which have always disappeared under that plea of prescription.

Its real mission and legal effect are thus described in the case of City Bank vs. Walden, 1 Ann. 46: " The monition act of 1834, under which the present proceedings are instituted, was passed for the protection of *bona fide* purchasers at judicial sales from litigation concerning matters of form, a non-observance of which by public officers frequently exposed purchasers to unreasonable and vexatious suits. The difficulty of administering and preserving proofs of the observance of formalities rendered cases of this kind, in the hands of the unscrupulous,

the instruments of great annoyance and expense to those who had purchased and paid for property exposed for sale under the authority of our courts. This law relates to informalities in the decrees under which judicial sales are made, and to irregular and defective proceedings connected with the sales." Dodeman vs. Barrow, 10 Ann. 193; Willis vs. Nicholson, 24 Ann. 545.

Hence, we feel justified in holding as we do in this case, that defects of form and of proceeding in the assessment, which in tax sales stands in lieu of judgment and citation, are cured by a monition taken in accordance with law and confirmed by a judgment of a competent court.

Were it otherwise, and if such informalities could not be reached by monition, it would be difficult to conceive the object contemplated by the law-maker in adopting that legislation, or what mischief he intended to remedy by means of that enactment.

### IV.

We think that the error of the assessor in listing the property in controversy on the resident, instead of the non-resident portion of the rolls, is likewise cured by the monition and the judgment confirmatory thereof.

On this point plaintiff places great reliance on Cooley, Burroughs and Blackwell, and their respective works on taxation, in which the doctrine is announced that the duty of listing lands on separate rolls as seated or unseated, resident or non-resident, is imperative, and that the omission of the same is a radical defect.

An inspection of the adjudications on which the doctrine rests, shows that the statutes therein construed made the distinction in the assessment rolls between seated and unseated lands, and resident and non-resident lists, with the object of fastening personal liability on the owners, in default of which the tax is lost, as there is no lien on the land itself. But that question does not present a similar importance under the tax laws of this State. Under our system, the tax is secured, not by the personal liability of the owner, as much as by the lien on the taxable property itself, and the legal object in requiring separate rolls of resident and non-resident owners is to facilitate search by the owners in the tax rolls, and to regulate the mode of proceeding in tax sales in cases of non-residents; but the omission of the duty in this particular does not affect the validity of the assessment if otherwise sufficient in matter of substance. Cooley on Taxation, p. 277; Blackwell, p. 137; Burroughs, p. 208, *et seq.*

In the case of Rougelot vs. Quick, 34 Ann. 124, we held that a defect in this particular contributed with other informalities to the nullity of the assessment, but in that case we had no monition to deal with, and our opinion is authority to the extent only that a non-compliance with the legal requirements as to resident and non-resident rolls, in the absence of monition or of the plea of prescription, will vitiate the assessment and the sale made thereunder. In our examination of the present case, we took the pains of re-examining the record in Rougelot's case, and we find that the only defense was a general denial followed by a demand for reimbursement of taxes paid and improvements made on the property by the defendant in the suit, purchaser at the tax sale.

## VII.

The complaint that the tax for General parish purposes for the years 1869, 1870, 1871 and 1872 was in excess of the limit of parochial taxation, is met by the defendants by the contention that it comes too late after the sale.

The same point was presented and discussed in the case of Shannon vs. Lane and husb., 33 Ann. 490, in which this Court said:

"We think, however, the defendant has let go by the *utite tempus* within which she might have successfully urged defenses against these excessive taxes and she cannot now set it up against this plaintiff." The point made in that case was that the complaint of excessive tax would have been good as a ground of injunction against a proposed sale, but that it could not avail as a means of assailing the sale after it had been completed.

The contention derives strength from reason and logic as well as from law and jurisprudence.

Proceedings for the assessment and collection of taxes are placed on the same footing as matters involving their validity as judicial proceedings. It is elementary that a judicial sale could not be set aside on the ground that the execution was for a larger amount than was actually due by the defendant. It is now settled that a writ of seizure and sale cannot be enjoined *in toto*, on the ground of an excessive demand; the injunction is restricted to the amount alleged to be in excess of the debt due by the defendant.

We note that a similar complaint was favorably entertained in Rougelot's case hereinabove referred to, but as stated, the point of its being too late was not made by the defendant in that case, in which the issue was simply a general denial.

## IX.

The objection of the alleged want of notices of sale is not pressed on appeal, and is, therefore, considered as abandoned. It is at all

events answered by the tax-deed itself, which contains the recital, uncontradicted by any evidence, that all the notices required by law were given, and which includes fees paid to the curator appointed to represent the non-resident tax debtor.

A very thorough and a very prolonged and laborious consideration of all the points of attack levelled by plaintiff at the tax sale in this case has satisfied us that they are unavailing and the sale must be sustained.

We therefore conclude that W. A. Peale, Mrs. Georgia Miller Smith and the Citizens' Bank in their respective proportions acquired a just and legal title to the "Panola" plantation at the tax sale made thereof, on the sixth of December, 1873, and that such was the title acquired from them by the defendants, Brown and Learned, on the twenty first of September, 1880, through the authentic act of sale of that date.

We thus reach the same judgment which was rendered below, but fortunately by an entirely different route, and through the very reverse of the reasons of the trial judge.

By the same process, however, we have reached the same conclusions followed by the district judge on the question of defendants' reconventional demand, which involves the validity of the judgment obtained by Henderson and Peale against the succession of George F. Sanderson on the ninth of October, 1867.

In their eagerness to obtain a judicial declaration of its nullity, plaintiffs' counsel have surrounded that judgment with a dense cloud of blunders and errors. But in directing their multifarious attacks against the judgment, they seemed to have lost sight of the relative positions of the parties under the pleadings in this case, and that their present resistance of that judgment does not place their client in the legal attitude of a plaintiff in action of nullity. Hence their present attack must be restricted to absolute alleged nullities resulting from radical defects, omissions and irregularities apparent on the face of the record.

When sifted through that criterion, which is elementary in jurisprudence, the discussion of this attack is of necessity restricted to one or two points only.

Plaintiff alleges want of jurisdiction in the court of Carroll parish in the matter of the appointment of her mother as her tutrix, for the main reason that her mother was at that time a resident of the city of New Orleans, and had then abandoned her former domicile in the parish of Carroll.

But in her petition for the tutorship, she alleges her residence in the

parish of Carroll. To this, however, the plaintiff herein, her daughter, and the tutrix herself both deny the authority of the counsel who appeared as her attorney in that petition as well as in all other proceedings in that court connected with the succession of George F. Sanderson, and with the judgment herein set up in reconvention.

That counsel was Edward Sparrow, the father of Mrs. Kate Sanderson, now Mrs. Foster, and the grandfather of the plaintiff. The record shows that in his day Gen'l Sparrow was one of the lights of the Louisiana bar, and an advocate whom honesty and delicacy of purpose were only equaled by the enviable reputation which he enjoyed throughout his whole career.

Were the record barren of evidence touching his professional authority to represent his daughter in the judicial proceedings now under consideration, we would hesitate to believe the charge of his officious intrusion in a court of justice without warrant or authority from the party whom he sought or pretended to represent. Mason vs. Steward, 6 Ann. 736.

But the evidence in the record is overwhelming in favor of the proposition that in all these proceedings he was the employed counsel of Widow Sanderson, and that in addition he was empowered to represent her completely and absolutely in all legal and other business and matters by a general and special power of attorney, which was of record in the parish of Carroll.

It follows, therefore, that the judicial declarations made by him for his client are binding on the latter, and that Mrs. Foster is thus estopped from denying her residence in Carroll parish at the time that she was appointed and qualified as natural tutrix of her then minor daughter, the plaintiff herein. She would be estopped by the very oath which she took, and which is contained in the record, in order to be qualified as tutrix.

These considerations lead to the double conclusion that the District Court of Carroll parish was the proper and the only tribunal for the purpose of the tutorship, and the only tribunal in which the suit of Henderson & Peale against the succession of G. F. Sanderson could be legally brought; and also that the appearance in that suit of Mrs. Sanderson, through her counsel, as the legal representative of the succession, cured all the alleged defects of citation in the premises, now alleged by plaintiff.

Under this showing, it appears that the judgment in question was rendered by a court of competent jurisdiction *ratione materiæ et personæ*, after issue joined, and it follows as a legal corollary that, until

set aside in a direct action in nullity, it imparts absolute verity and has all the force and effect of the thing adjudged

That proposition finds unqualified support in an unbroken line of decisions of this Court, and its effect is to absolutely shut the door against the innumerable irregularities which plaintiff's counsel have marshalled in their collateral attack of the validity of the judgment.

"No principle of law has received greater and more frequent sanction, or is more deeply imbedded in our jurisprudence, than that which forbids a collateral attack on a judgment or order of a competent tribunal not void on its face *ab initio*." State ex rel. Mestayer vs. Judge, 36 Ann. 831; Stackhouse vs. Zuntz, 36 Ann. 533; Duson vs. Dupré, 32 Ann. 896, and authorities therein cited.

Another contention made by plaintiff must be noted in this case: it is the alleged want of evidence of the ownership of the judgment by W. A. Peale, who claimed in his sale to defendants to hold the same under a transfer from Henderson and Peale. That objection does not lie in the mouth of the judgment debtor. We are referred to no adverse claim set up in the premises by either member of that firm, or by their legal representatives or other assigns; and the defendants, claiming under them, have a proper standing in court until they are met by objections from parties claiming better rights than theirs. Bothick vs. Greves, 34 Ann. 907; Citizens' Bank vs. Moreau, 37 Ann. 857.

Understanding that in his decree the district judge maintained the defendants' title on the exclusive ground of the validity of the Henderson & Peale judgment, we reach the conclusion that although his reasons were bad, his decree was correct.

The judgment appealed from is therefore affirmed at the costs of plaintiff and appellant in both courts.

Mr. Justice Todd concurs in the decree.