## James Beale and others, Heirs of Thomas Beale, deceased, *v.* Daniel Treadwell Walden.

The purchaser at a judicial sale, made under the orders of a Court of Probates, is not bound to look beyond the decree of the court recognizing the necessity of the sale. He is bound to look to the jurisdiction of the court; but the truth of the record concerning matters within its jurisdiction, cannot be disputed.

The provision of the Code of 1808 (book 3, title 1, art. 59), that the place where the party died is that in which his succession shall be considered to be opened, having been repealed by the Code of 1825, which declares (art. 929) that the succession shall be considered as opened in the parish in which the deceased resided, if he had a fixed domicil within the State : *Held,* that the death of the party must be considered as irrevocably vesting the jurisdiction, and that, if the death occurred while the old law was yet in force, the jurisdiction must be determined by it, though no proceedings were had before the promulgation of the new. But that where a parish has been divided since the death, the jurisdiction will depend upon the fact of the court of the original parish having taken any steps, or assumed jurisdiction in relation to the *mortuaria,* before the division. If it has, its jurisdiction will not be divested by the division ; otherwise jurisdiction will belong, under art. 929 of the Civil Code, to the court of the parish which embraces the residence of the deceased.

A tutor, as such, without letters of administration, has no authority to administer a succession in which his pupil has an eventual or residuary interest. Such a succession must be administered as an entire thing, for the advantage of the creditors,

as well as of the beneficiary heirs entitled to the residue after the payment of debts.

In the alienation of the property of minors, the advice of a family meeting forms an essential part of the judgment or *basis* upon which it rests. Though the Civil Code does not expressly require that the family meeting shall be held in the parish in which the court sits, such must be considered as the true construction of all its provisions, taken together.' C. C. 305, 308. Act 10 March, 1834, s. 1

The act of 10th March, 1834, relative to the titles of purchasers at judicial sales, applied only to the actual and immediate purchaser at the judicial sale. The benefits of that act were extended to subsequent vendees, holding under the original purchaser at the judicial sale, by the act of 11th March, 1837. Consequently the homologation of the sale, on a monition sued out before the act of 1837, by one to whom an act of sale was executed, on an acknowledgment, at the foot of the *procès-verbal* of the auctioneer, made by the person to whom the property was adjudicated, that he had purchased the property for the former, will not cure any irregularities in the sale.

APPEAL from the District Court of the First District, *Buchanan*, J.

*Lockett, Micou, Wilde* and *Roselius,* for the appellants.

*C. M. Conrad, F. B. Conrad,* and *D. Seghers,* for the defendant.

*W. Christy,* made a party as assignee of the defendant, who had been declared a bankrupt since the commencement of the suit, appeared on the same side.

BULLARD, J. The facts connected with this controversy appear to be, that Thomas Beale, the ancestor of the present plaintiffs, died in the parish of Orleans, in 1820, leaving them as his heirs at law, and a widow in community, Céleste Beale, their mother, who became their natural tutrix. In 1823, his natural son, Thomas Beale, Jr., died. He had acquired by purchase from his natural father a large amount of property, by what appeared afterwards a simulated sale. While the estate of Thomas Beale, Jr., was in train of administration in the Court of Probates for the parish of Orleans, proceedings were instituted in that court by Céleste Beale, as widow in community and tutrix of her minor children, to annul that sale as simulated, and to subject the property, which formed the object of it, to the claims of the widow, minor heirs, and creditors of the father. The tract of land which is sued for in this case, was one of the objects sold. The incidents and result of that controversy may

Beale and others v. Walden.

be seen by the report of the case, in 6 Mart. N. S. 640, *Beale* v. *Delancy et al.* The judgment of the Court of Probates, which was affirmed in the Supreme Court, annulled the sale as simulated and void; and the court further decreed, "that all the moneys, titles, and effects constituting the estate of Thomas Beale, Jr., as well as the respective properties, so apparently sold, either *in rem*, if existing yet as such, or in value and proceeds, if disposed of legally, shall be, until further order, considered as *sequestered* and holden as such, and respectively for such parts thereof in their hands, by the curator of Thomas Beale, Jr., and the register of this court, to be afterwards disposed of and respectively delivered, to wit : the estate of Thomas Beale, Jr., for exclusive settlement and liquidation of direct and personal claims against it, to his mother, Mrs. Chlory Delancy, pursuant to the judgment in her favor, and upon fulfilling the requisites of the law ; and to Mrs. Céleste Grandpré, widow of Thomas Beale, senior, or to any other appearing *regularly* and *legally* in court to the purpose, and to be so taken possession of, *in rem*, or otherwise as aforesaid, the properties namely, called in the aforesaid simulated acts of sale and mortgage, a plantation, slaves, and the Planters' and Merchants' Hotel, applicable, whenever duly, separately and legally prayed for and acted upon, to both the settlement and liquidation of the estate of Thomas Beale, senior, which estate shall pay the costs of the present suit, and remain subject to any further eventual claims, or damages, resulting in law from the said simulated deeds of sale, either before or after this date."

This judgment, we have remarked, was affirmed in this court. These proceedings were had before the separation of the parish of Jefferson, in which the land is situated, and the minors resided with their mother, from that of Orleans. The parish of Jefferson was organized in February, 1825, but the act contains no provisions in relation to a transfer of causes pending in the courts of the parish of Orleans to those of the new parish, nor relative to the administration or liquidation of successions already opened before the separation of the two parishes.

It does not appear that the decree of the Court of Probates

for the Parish of Orleans, sequestering the property until further order of the court, was ever set aside. In the mean·time, suit was brought in the District Court of the United States by Wistar against the widow and minor heirs of Thomas Beale, for a debt due by the deceased, and judgment rendered in May, 1829. This judgment appears to have been satisfied in July, 1830.

No administrator was appointed to the estate of Thomas Beale, senior, but in April, 1829, the widow appeared in the Probate Court for the parish of Jefferson, and was qualified as curatrix *ad bona* of one of her children, and tutrix of the others ; and L. Favrot was appointed curator *ad lites*, and under tutor.

In May, 1830, the widow was authorized, by the Probate Court of Jefferson, on the advice of a family meeting convened in that parish, to borrow $7,000, to pay the judgment rendered in favor of Wistar.

We now come to the steps which immediately preceded the alienation of the plantation, the validity of which is the principal question in this case.

The widow having caused an inventory of the property belonging to the succession of Thomas Beale, Jr., to be taken by order of the Court of Probates for the parish of Jefferson, presented her petition in July, 1830, in which she represents that she had effected the loan necessary to pay off the judgment in favor of Wistar ; that, in order to secure the loan, as well as to pay the other charges of the succession, and to come to a final settlement of the estate of the deceased, and of his community with her, it had become necessary to proceed to the sale of the property belonging to the same. She prays that a certain part of the property, consisting of servants, furniture, &c., necessary for the use of the family, may be adjudged to her at the price of appraisement, and that the remainder may be sold, on such terms as a family meeting might direct ; and for that purpose she prays for a family meeting. Whereupon a family meeting was ordered to take place on the same day, and accordingly it was holden before the judge himself. The family meeting advised the sale of the plantation, on a credit of one, two, three, and four years. These proceedings were homologated by the judge, and the sale ordered. But the plantation was not sold

for want of bidders; whereupon another family meeting was holden, which advised another appraisement. This meeting, and another afterwards, were convened in the parish of Jefferson. But the land still remaining unsold, another family meeting was ordered to convene in the city of New Orleans, before Seghers, a notary public, and on their advice as to the terms of the sale, the judge ordered the sale to take place at the Exchange Coffee House, in New Orleans.

It was in pursuance of this judgment that the plantation was sold, and adjudicated to E. Soniat, according to the certificate of the auctioneer.

At the foot of the *procès-verbal* of the auctioneer is an acknowledgment, signed by Soniat and Walden, that Soniat purchased the property for Walden. This acknowledgment is without date; but some days afterwards a notarial act of sale was passed to Walden, and signed by the widow, and by one of the heirs who had been emancipated in the mean time by marriage, and whose husband, Samuel Ricker, signed with her. This deed bears date the 19th of March, 1831, the adjudication having taken place on the 7th: and the parol evidence shows that the acknowledgment above mentioned was not signed until the 19th.

In November, 1834, this sale was homologated, on a monition sued out by Walden, in virtue of the act of 1834, "for the further assurance of titles to purchasers at judicial sales." The act extending the provisions of that statute to others than actual and immediate purchasers at judicial sales, was not approved until 1837. See B. & C.'s Digest, p. 586.

The defence to this action, as set forth in the defendant's answer and exception is, that the defendant is in possession, and is the owner under a valid and sufficient title; that on the 7th of March, 1831, the property was legally sold and adjudicated to the defendant, and a conveyance signed on the 19th of the same month; that the sale as afterwwards homologated on monition; that the sale was necessary to pay certain pressing debts; and that the price paid was applied to pay those debts. He claims to be paid for improvements of the value of $20,000, and to be refunded, in case of eviction, one half of the price paid by him; and, finally, he pleads prescription.

The case was tried by a jury, who, under the instructions of the judge, found a verdict for the defendant; and, judgment having been rendered accordingly, the plaintiffs appealed.

The counsel for the appellants contend in this court: 1st. That the Court of Probates for the parish of Jefferson had no jurisdiction, and that the natural tutrix had no lawful authority to sell, without having first obtained administration and given security. 2d. That the sale did not pursue the adjudication, and that the transfer from Soniat to Walden was not a judicial sale. 3d. That there is no legal evidence of a debt due to Wistar by the heirs of Beale, and that the proceeds of the sale are shown not to have come to their hands, or been applied for their benefit. 4th. That neither the prescription of five nor ten years can avail the defendant.

The whole controversy turns upon the two first questions here presented, to wit, the jurisdiction of the Court of Probates of the parish of Jefferson, and, if it had such jurisdiction, whether Walden was a purchaser, at a judicial sale; for if that court had jurisdiction, we will not go behind its judgment to enquire whether there was legal evidence of a debt, or, in other words, a necessity for the sale, or whether the proceeds went into the hands of the tutrix for the benefit of the minors; and if Walden was not a judicial purchaser the defects in the proceedings are not cured by a monition and homologation of the sale, before the passage of the act of 1837, extending the benefit of the act of 1834 to subsequent vendees, holding under the original purchasers at judicial sales. In *Michel's Heirs* v. *Michel's Curator et al.* (11 La. 134), we held that the purchaser is not bound to look beyond the decree of the Court of Probates recognising the necessity of a sale; and in *Lalanne's Heirs* v. *Moreau*, the court said, that the purchaser under a decree of the Court of Probates is bound to look to the jurisdiction, but that the truth of the record concerning matters within that jurisdiction cannot be disputed. 13 La. 432. 3 Rob. 120.

First, then, as to the jurisdiction of the Court of Probates of the parish of Jefferson.

The succession of Thomas Beale, senior, was opened in a legal sense by his death, which took place in the parish of Or-

leans before its division.   If the Court of Probates had already taken cognizance, before the parish of Jefferson was set off, its jurisdiction was not divested by the separation.   This point was expressly decided in *Patouillet* v. *Patouillet* (2 La. 270).   In the case of *Forstall* v. *Forstall et al.* (4 La. 214), in which the question arose, whether the Probate Court for the parish of Orleans, in which the succession was opened under the old Code, but where no proceedings were had before the amendments of the Code which adopted a different rule, or the court in which the succession was opened under the new Code, had jurisdiction, this court held that the Court of Probates did not lose its jurisdiction, although no proceedings were had until after the promulgation of the new Code, which repealed that provision of the old.   In *Harang* v. *Harang et al.* the court held, that when a parish is divided, the court of the parish composed of that in which the deceased resided before his death, will have jurisdiction of the settlement of his estate.   7 Mart. N. S. 51.

The principle clearly deducible from these different decisions is, that where there has been a change of legislation as to the parish in which the succession shall be considered as opened by the death of the party, his death will be regarded as irrevocably vesting the jurisdiction, but that where a parish has been divided afterwards, then it will depend upon the fact, whether the court of the original parish had taken any steps, or assumed jurisdiction in relation to the *mortuaria*—if so, its jurisdiction is not divested by the change, otherwise it will belong to that of the two parishes which embraced the residence of the deceased.

The position of the two successions of Thomas Beale, senior, and of Thomas Beale, junior, as shown by the record in the case of *Delancy et al.* v. *Beale,* is quite anomalous.   They were blended together as to claims against them, in consequence of a simulated sale from the father to the son, which appears to have been a sale *omnium bonorum.*   There was administration of the son's estate, and the property thus acquired, for which the son's estate still owed about $124,000, was sold and bought in by the widow of Thomas Beale, senior, who claims to be set down for herself and her minor children, as mortgage creditors for that

amount.  Upon this opposition the decree was made by the Court of Probates of the parish of Orleans above set forth, annulling the simulated sale, and sequestering the whole in the hands of the curator and the register of the court, with a view to a separate administration according to law.  That this is evidently the view of the court, is apparent from another part of the decree, not copied above, which is as follows: "And it is finally ordered and decreed that, owing to the confusion of the claims and oppositions cumulating against one estate, the settlement and liquidation of two, which are imperiously and lawfully to be made separately, all other creditors, in their respective applications, shall stand before the court in *statu quo,* or nonsuit, until by *regular respective* proceedings for further administering upon the two separate estates, agreeably to the judgment of the court, and that they may be accordingly classed in proper *new tableaux* of distribution, according to their rank and privilege, &c."

Thus it appears that the property composing the estate of Thomas Beale, senior, or at least the bulk of it, and particularly the property now in controversy, was sequestered and held in the custody of the law, by the same judgment which restored the property to the estate, with a view to its regular separate administration.  No such administration ever took place, either under the authority of the Court of Probates of New Orleans, or that of the parish of Jefferson; nor does it appear that the order of sequestration was ever set aside or rescinded.  On the contrary, it appears by a document in the record, that certain creditors, the register of the court, and the attorney of the natural mother of Beale, junior, who was his heir under benefit of inventory, had agreed with the widow of Beale, senior, not to molest her in proceeding to have all the property sold, upon the express condition that D. Seghers should keep in his hands, or under his control, a sufficient amount of the proceeds of said sales, to answer for certain claims.  It was in pursuance of this agreement that the widow, acting as tutrix of her minor children, provoked the sale of the property, without having been appointed administratrix of the estate.  These proceedings, in our opinion, amount to an assumption of jurisdiction by the Court of Probates

of New Orleans—such a commencement as conferred on the court the exclusive power to continue the administration under its control.

But if this were doubtful, it has been repeatedly decided by this court, that a tutor, as such, without letters of administration, has no authority to administer on a succession in which his pupil has an eventual and residuary interest. Such a succession must be administered as an entire thing, for the advantage of the creditors, as well as the beneficiary heirs entitled to the residue after the payment of debts. *Jacob, Tutrix*, v. *Tricou et al.* 17 La. 104. *Tildon* v. *Dees, Tutrix*, 1 Rob. 407.

Not only was the tutrix without authority to provoke the sale, but, in our opinion, the proceedings which led to it were irregular. In matters of alienation of minors' property, the advice of a family meeting forms an essential part of the judgment, or basis upon which it rests. It is true, the Code does not expressly require that the family meeting should be holden in the parish where the court sits. But such must be regarded as the true construction of the Code, when all its provisions on this subject are considered together. The 305th article of the Code requires that the family meeting shall be selected from those residing in the parish in which the family meeting is held, that is, the domicil of the minors. Now, if the judge could appoint the meeting to be held in a parish in which the minors do not reside, he might order it in a parish remote from the residence of all their nearest relations. Again, the members are to be convoked by *citations* addressed to them; and it can hardly be supposed the legislature intended to authorize the Court of Probates to send its process beyond the limits of the parish. The act of 10th March, 1834, passed subsequently, it is true, to the proceedings in this case, yet contains a legislative construction of the previous laws, which confirms these views. It authorizes the judge to impose a fine not exceeding twenty dollars for neglecting to attend a family meeting, to be collected in the same manner as fines imposed on witnesses failing to attend. The court could not fine a person beyond the reach of its process, nor send an officer to collect the fine. B. & C.'s Dig. 437. We think, therefore, the Code contemplated that the family meeting should be holden in the parish where the minors reside, and within the

jurisdiction of the court by which it is ordered, although by an amendment of the Code in 1826, relations residing within thirty miles, may be required to attend, without regard to parish lines. B. & C.'s Dig. p. 151, s. 18.

This irregularity would, perhaps, be cured by the homologation of the sale under monition, but we have already said that, in our opinion, Soniat was the purchaser at the judicial sale, according to the *procès-verbal* of the auctioneer, and the name of Walden was substituted afterwards, in consequence of doubts having arisen in the mind of Soniat as to the regularity of the proceedings and the validity of the title thus acquired. The sale was complete between the parties by the adjudication; and Walden was informed, according to the evidence, of the difficulties which existed as to the title.

It is not shown that any part of the price for which the property was sold has been received by any of the plaintiffs since they attained the age of majority, so as to amount to a tacit ratification. One of the notes given for the price, amounting to $5,975, was discounted by the widow, and applied to pay the Wistar judgment. That judgment was against the plaintiffs, as heirs of Thomas Beale, and consequently that part of the price went to benefit them, and allowance ought to be made for it in compensation of rents and profits. The plaintiffs' mother, it appears, had paid the judgment, and afterwards discounted the note to reimburse herself. The amount borrowed by her to pay the judgment was $7,350; but that was raised by a mortgage on community property, and was a community fund. As one half belonged to the minors, they were accountable only for the other half, $3,675. The fruits, at the rate of $1,000 per annum, for one undivided half of the land, say three years and five months, since this suit was instituted, equal to $3,416 50, leaves a small balance in favor of the plaintiffs, of $258 34, which they are entitled to recover, together with half the land. No improvements are shown to have been made, for which the defendant is entitled to any allowance; and the plea of prescription is not sustained by the evidence.

It is, therefore, ordered and decreed, that the judgment of the District Court be reversed, and ours is, that the plaintiffs recover one undivided half of the tract of land described in their

petition, and be quieted in their title thereto; and that they further be allowed, as a claim against the estate of D. T. Walden in the hands of his assignee, to be paid in due course of administration, the sum of two hundred and fifty-eight dollars and thirty-four cents, with costs in both courts.