## Bryan v. Atchison.

Where all the heirs of a succession are minors, their tutor may, as such, administer the succession, and sue for the sale of the property. The decree for the sale will be binding upon the heirs and creditors. *Per Curiam:* By the dispositions of the Civil Code, when the heirs claimed time to deliberate, an administrator was to be appointed in all cases; and when the succession was afterwards accepted with benefit of inventory, the administrator was to continue in his functions, and to settle the succession. But the Code of Practice, subsequently adopted, provides that an administrator shall be appointed in such cases, if any of the creditors of the succession require it; and this we take to be the rule now in force, as being the last expression of legislative will. C. P. 976.

Where a judgment has been rendered between proper parties and by a court of competent jurisdiction, the truth of the facts upon which it rests cannot be inquired into collaterally, Where the demand of an intervenor does not grow out of the principal action, and is not specially permitted by law, it must be dismissed. C. P. 328.

APPEAL from the District Court of Carroll, *Mayo*, J. The facts of this case are stated in the opinion of the court, *infra*.

*Dunlap, Snyder* and *Bullard*, for the plaintiff. The warrantor sets up title by a forced alienation from *Neibert's* estate to *Wilkins*, made April 8th, 1842, resulting from a judgment of the Court of Probates, and sale in pursuance thereof.

This title, and the judgment or decree upon which it is founded, are opposed by us as absolutely null and void. 1st. Because the decree of sale was *ex parte*, and without notice to any one as representing the succession, and was not a judgment. 1 Mart. N. S. 9. 5 lb. 446. 19 La. 354. 14 La. 17. 2d. The judgment in favor of *Wilkins* is a nullity as affects the succession or creditors of *Neibert*, because there was no defendant authorised to represent the succession or creditors. 10 La. 222. 1 Kent. 261. 5 Rob. 420. 3d. An administrator must be appointed in every succession accepted with benefit of inventory. 9 Rob. 141. C. C. arts. 1034, 1037, 327, 1051. 6 La. 207. 17 La. 149. C. P. 976. 18 La. 396. 11 Rob. 69. 4th. Administrators must give bond, 11 La. 134. 11 Rob. 407. A tutrix, as such, could not stand in judgment. 17 La. 149. 11 Rob. 69. She may be appointed administratrix, but must give bond. 1051 C. C. 963. A administrator must be a resident of the State. C. P. 990, 995–6–7. 5 La. 386. 6 Mart. N. S. 521. 4 La. 202. C. C. 1036. 1 Rob. 235, 261, 268. Forced alienations are void without legal formalities. 2 La. 328. 11 M. 610. 3 La. 427. 4 La. 150. 9 La. 543.

A tutrix, as such, cannot stand in judgment in an action for the sale of the property of the minors. A sale made under a judgment obtained in such a case will not be binding on the heirs or creditors. C. C. 1037, 1041, 1042. *Tildon* v. *Dees*, 1 Rob. 407. *Hall* v. *Parks*, 9 Rob. 138. *Parks* v. *Patton*, 9 Rob. 167. *Beale* v. *Walden*, 11 Rob. 69.

*Thomas*, for the defendant.

*R. N.*, and *A. N. Ogden* for the intervenors, contended that the sale at the suit of the tutrix was legal, citing *Erwin* v. *Orillon*, 6 La. 212. *Poultney's Heirs* v. *Cecil*, 8 La. 4. *Jacobs* v. *Tricou*, 17 La. 106. Civ. Code, arts. 934, 935, 936, 939.

*Stacy* and *Sparrow*, for *Chambliss*, cited in warranty.

The judgment of the court was pronounced by

ROST, J. *James Campbell Wilkins* and *Joseph Neibert*, were joint owners of a plantation and slaves, and *Wilkins* was a creditor of the partnership for a large sum. *Niebert* died, leaving a wife and three minor children. *Sarah Bryan*, the widow, was confirmed as natural tutrix, and an under-tutor was appointed. A family meeting, convened to deliberate on the interests of the minors, was of opinion that it was materially for their interest and advantage, that the succession of their father should be accepted in their behalf, under the benefit of an inventory; and, with the authorisation of the judge, it was so accepted by the tutrix. *Wilkins* instituted an action against the succession of *Joseph Niebert*, for a partition of the partnership property, and a settlement of accounts, and caused a curator *ad hoc* to be appointed to represent the tutrix, who resides, with her children, in the State of Mississippi. *Wilkins* having subsequently been apprised that the tutrix had appointed an agent to represent her in this State, presented a supplemental petition, asking that he might be cited. This was done, and the agent appeared and defended the suit.

The court, after hearing the parties, gave judgment against the succession of *Joseph Niebert*, represented by *Sarah Niebert*, tutrix, for the sum of $77,000, and it having been made satisfactorily to appear that the tutrix had no funds in

BRYAN
v.
ATCHISON.

her hands belonging to the succession, and that a sale of *Niebert's* interest in the plantation and slaves was necessary to satisfy this judgment and such other debts as the succession might owe, the court, on the petition of *Wilkins*, ordered the property to be sold. The sale was made by the judge, and the undivided half of the plantation and slaves was adjudicated to *Wilkins*, at public auction, for a sum greater than its appraised value. The purchaser obtained a monition, and, after the usual advertisements, a decree ratifying the sale was obtained without opposition. *Wilkins* subsequently sold the whole plantation and slaves to the defendant. This sale took place on the 20th of April, 1842.

On the 21st of November, 1845, the plaintiff was appointed administrator of the succession of *Niebert*, and, on the next day, instituted the present action to avoid the probate sale, on the grounds that the tutrix had not given surety as administratrix; that, in her capacity of tutrix, she could not administer; and that the succession was not represented in the suit of *Wilkins*, under which the sale took place. He claims the undivided half of the plantation and slaves, and of the crops made upon the plantation since the opening of the succession. The defendant called in his warrantors, and left to them the defence of the suit, claiming against them his legal rights, in case of eviction. Several banks of the State of Mississippi, who were the holders of the notes given by *Atchison* to *Wilkins* for the price of the plantation, having been notified of the proceedings by *Atchison*, intervened, and joined in the defence, asking, at the same time, judgments in reconvention against him, upon such of the notes in their possession as were due at the time.

There was a final judgment against the plaintiff in the first instance, and a judgment of non-suit against all the intervenors, but *Jacob Surget*, who, we are informed in argument, obtained a judgment against the defendant for the amount of his claim, although this fact does not appear in the record. All the parties cast have appealed.

It seems to have been conceded on both sides in argument, that the legal question upon which this case turns is, whether, when all the heirs in a succession are minors, their tutor may, as such, administer the succession, and has capacity to stand in judgment in a suit for the sale of the property, so as to make the decree of sale binding upon the heirs and creditors. The warrantors, relying upon the case of *Erwin* v. *Orillon*, 6 La. 213, in which the Supreme Court held that, under art. 327 of the Louisiana Code, the administration of the succession which gave rise to the tutorship, devolved upon the tutor; the plaintiff resting his case on the decisions of the same court in *Self* v. *Morris* and other cases, where it has been held that a succession accepted in behalf of minors cannot be said to be their property; that it does not legally come to their possession, until it has been administered upon; and that only what remains after the payment of its debts, belongs to the minors, and falls under the administration of their tutor.

A succession is a fictitious being, representing the rights and charges which a person leaves at his death, and in neither case the person of the deceased. All persons having rights against it must have a remedy to enforce those rights. Whether the title to so much of the property of the succession as is necessary to pay the debts, vests in the creditors absolutely, or whether the whole property of the succession is acquired by the heir, and stands in his hands as it did in those of the deceased, the common pledge of the creditors, are questions of

little practical utility, so far as the creditors are concerned. Upon either hypothesis, the debts must be paid.

It is true that, under the dispositions of the Civil Code, when the heirs claimed the term to deliberate, an administrator was to be appointed in all cases; and when the succession was afterwards accepted under the benefit of an inventory, the administrator was to continue in his functions, and to settle and liquidate the succession. But the Code of Practice, subsequently adopted, provides that an administrator shall be appointed in such cases, *if any of the creditors o the succession require it;* and this we take to be the rule now in force, as being the last expression of legislative will, and having moreover the advantage to be founded in reason, and to harmonise with other dispositions of the Code of Practice relating to the administration of successions. C. P. art. 976.

It is not pretended that any creditor in this case ever required the appointment of an administrator, and the judge was not bound to appoint one; so that, if the tutrix did not represent the succession, creditors could not enforce their claims. The law has not left without a remedy persons, who being thus situated, are either unwilling or incapable to be administrators, or unable to give the security required. Art. 120 of the Code of Practice provides in what manner, and against whom, suits are to be brought in such cases. Art. 25 of that Code goes so far as to give a direct action against the heirs, for the reparation of injuries caused by the crimes or misdemeanors of the deceased; and, in cases where the heir is not personally responsible, because he has accepted the succession under the benefit of an inventory, art. 992 gives the creditor the right to cause so much of the property of the succession as is necessary to satisfy his claim, to be sold. Art. 1370 of the Civil Code gives creditors the right in all cases, to cause the property of the succession to be kept distinct and separate from that of the heirs. All these articles would be inoperative, if successions were in all cases to be administered by administrators.

*Wilkins*, in his suit against the succession, has substantially complied with these dispositions of the Code of Practice. The proceedings appear to have been conducted in good faith, and there cannot be a doubt that the succession of *Niebert* was properly represented. The judgment having been rendered between proper parties and by a court of competent jurisdiction, the truth of the facts upon which it rests cannot be enquired into collaterally; and the informalities alleged to have taken place in the subsequent proceedings, were all cured by the monition.

There is no error in the judgment of non-suit against *Mandeville, Montgomery,* and *Walworth,* claiming to be assignees of the Planters Bank, and *Robeson,* claiming to be trustee of the Commercial Bank.

Supposing, for the sake of argument, the capacity of those persons to have been shown, their demand does not grow out of the action, and is not specially permitted by law. C. P. art. 328.

The defendant, by leave of the court, abandoned that portion of his answer which claimed a recision of the sale from *Wilkins* to him, on account of want of title to the three school lots. After this abandonment, his interest, and that of the banks, in the principal demand, were identical. There was no *contestatio litis* between them, and the banks cannot create one, under color of a reconventional demand, as they have attempted to do. The only issue in the case was the validity of the probate sale, which we have just recognised.

*Judgment affirmed.*