O’NIELL, C. J.
 

 This is an appeal from a judgment appointing a testamentary execu
 
 *371
 
 tor to administer a succession. The only question is whether there was any necessity for the appointment.
 

 Mrs. Eliza Roy Comeau, a widow, died on the 12th of August, 1924, leaving as her heirs at law two- sons and a daughter, all of age. The estate of the deceased is appraised at $46,747.10, consisting of $38,249 of real estate and $8,408.10 of movable property. The real estate consists of a cotton plantation valued at $35,822.80 and two tracts of woodland, one valued at $1,646.20 and the other at $780.
 

 The deceased left a will, in which she gave only two legacies, one for $800 and the other for $50. She directed that the rest of her estate should be distributed among her heirs according to law. She did not appoint an executor.
 

 She owed debts amounting to $2,876.74, besides the expenses of the last illness and funeral expenses, and-the taxes amounting to $765, which would soon be due. She had $333.60 in bank, to which was added $650.46 before the judgment was rendered, appointing the executor.
 

 The plantation was cultivated by tenants— 12 families; some of them paying a third and others half of their crops of cotton, corn, and potatoes as rent. The crops were ready for harvest, in fact the harvesting had commenced, when Mrs. Comeau died.
 

 The elder son, an assistant cashier of a bank, who was already managing his mother’s affairs, made application to be appointed executor, alleging that there were debts to be paid, crops to be harvested and marketed, and settlements to be made with the tenants on the farm.
 

 The brother and sister of the applicant opposed his appointment, averring that they accepted the succession unconditionally and without the benefit of inventory; that the estate could be divided in kind; that there was no necessity for an administration; and that the appointment of an executor to administer the estate would therefore impose a useless expense upon them. The brother averred that, if the court should deem it necessary to axipoint an executor to administer the estate, he would perform the services without compensation; that he had had 25 years of experience managing the plantation, and would furnish bond for the faithful performance of the duties of executor or administrator.
 

 On the petition of the applicant for apXiointment as executor, the judge appointed him temporary “guardian and keeper” of the estate, with authority to harvest and market the crops and to make settlements with the tenants.
 

 On the 4th of October, the oxxponents filed a supxjlemental opposition, averring that the crops of cotton, corn, and potatoes had been gathered, and that the succession’s share was worth more than $5,000, which would more than pay the debts of the succession. They prayed that the crops should be ordered sold and the debts paid.
 

 Opinion.
 

 This succession was so well off financially that it seems strange and regrettable that the three heirs did not accept it unconditionally and save the expense of an administration. But, when one of the heirs would not accept unconditionally, some one had to be given authority to administer the estate. The crops had to be harvested; the tenants had to be settled with; and the debts had to be paid. The fact that the croxxs were harvested when the supplemental petition or opposition of the appellants • was filed in the district court does not show that there was no necessity for an administration. On the contrary, we assume that the succession -was then being attended to by the so-called “guardian and keeper,” for he was appointed nearly a month before appellants’ supplemental petition or opposition was filed in the district court.
 
 *373
 
 It is conceded, at least it is not disputed, that the applicant in this case is legally entitled to the appointment of executor or administrator, in preference to either of the opponents, if an administration of the succession is necessary. No authority has been cited for the proposition — and we are not aware of any such provision, although it might be a wise provision in the law — that an heir to a succession can prevent the appointment of another heir as administrator or executor by offering to perform the service without compensation.
 

 The learned counsel for appellants admits in his brief that district judges are allowed much discretion in the matter of appointing executors and administrators, and that their decrees in that respect are not often reversed on appeal. The learned counsel argues that the judge abused his discretion in this case. We are not convinced of that'. Although it seems to us that the three heirs to this succession ought to have agreed to accept it unconditionally and save the expense of an administration, we do not see how the district judge could have compelled them to do so, when the succession owed debts, and the plantation had to be administered by some one in authority.
 

 We do not rest our decision in this case upon the opinion that, under article 1047 of the Civil Code, every heir to a succession has the right to impose the expense of an administration upon his coheirs, even though the succession owes no debts and there is no necessity for an administration, by arbitrarily declining to accept the succession unconditionally, or without the benefit of inventory. That seems to have been the interpretation of article 1047 in several decisions. See Girod’s Heirs & Legatees v. Girod’s Executors, 18 La. 399; Soye v. Price, 30 La. Ann. 96; Blake v. Kearney,"30 La. Ann. 388; Succession of Clark, 30 La. Ann. 801; In re Lewis, 32 La. Ann. 390; Succession of Baumgarden, 36 La. Ann. 49; Succession of Powell, 38 La. Ann. 184; Succession of Bulliard, 111 La. 188, 35 So. 510. It is not necessary to go that far in this case, because the succession does owe -debts and there are important functions for the executor to perform as administrator. In three decisions, at least, this court went to the other extreme, maintaining that the court should never appoint an administrator, even for a succession that owed debts, unless a creditor required it. See Bryan v. Atchison, 2 La. Ann. 462; Succession of Story, 3 La. Ann. 502; Succession of Weincke, 118 La. 206, 42 So. 776. In those cases the court construed article 976 of the Code of Practice as meaning that an administrator should never be appointed unless a creditor of the succession required it. The court held that the article was not consistent with article 1047 of the Civil Code, in so far as the latter article seemed to require that án administrator should be appointed whenever one of the heirs claimed the benefit of inventory. And the court held that, to that extent, the article of the Civil Code was repealed and superseded by the article of the Code of Practice. If, as the court thought, the two articles contradicted each other, the article of the Civil Code would have to give way, and be deemed repealed by the article of the Code of Practice. Section 10 of the Act of April 12, 1S24, p. 178, entitled, “An act to provide for the printing and promulgation of the amendments made to the Civil Code of the state of Louisiana” (Rev. Stat. §§ 514 and 592), declares that, if the Code of Practice contains any provisions contrary or • repugnant to those of the Civil Code, “the latter shall be considered as virtually repealed or thereby amended in that respect.” The writers of the Code of Practice did not intend to make its provisions contrary or repugnant to those of the Civil Code. They intended that the provisions of each Code should have their full meaning and effect. If it is possible to
 
 *375
 
 reconcile article 976 of the Code of Practice with article 1047 of the Civil Code, we must give each of them its meaning and effect. The learned counsel for appellee has directed-our attention to an error that occurred in the translation of article 976 of the .Code of Practice, from the French text, which seems to explain and reconcile the two articles.
 

 Article 1047 of the Civil Code declares:
 

 “If there be several heirs to a succession, some of whom have accepted unconditionally, and others claim the' benefit of the term for deliberating, the judge of the place where the succession is opened shall, notwithstanding, cause an inventory to be made of the effects of the succession, and shall appoint ait administrator to manage them, until a partition of the same be made among the heirs.”
 

 Article 976 of the Code of Practice declares:
 

 “During the time allowed for making the inventory and for deliberating, the judge shall appoint an administrator to retain the property, if any of the creditors of the succession shall require it, and in making such appointment he shall prefer the beneficiary heir; such administrator shall give good and sufficient security, in the same manner as curators of vacant estates and absent heirs, unless the said administrator shall prefer giving such security by a special mortgage.”
 

 The word “retain” in the expression, “the judge shall appoint an administrator to retain the property,” was “détenir” in the original or French text, which, in law phrase, according to all of the lexicographers, means to hold in one’s custody for another. The intention of the writers of article 976 of the Code of Practice was that the administrator, whom the judge was required to appoint if a creditor demanded it, during the taking of the inventory, would be merely a detainer or keeper of the property until, at the end of the term for deliberating, it should be decided whether this detainer or keeper should turn over the property to the heirs or go on and administer the estate. The declaration in the Code of Practice that the judge shall appoint an administrator to retain, or detain, the property, if a creditor of the succession shall require it “during the time allowed for making the inventory and for deliberating,” does not exclude the idea that the judge-cannot appoint an administrator, unless a creditor of the succession does require it. In fact, it was said in the Succession of Story, supra, that a case might arise requiring the appointment of an administrator for a succession that owed no debts, and therefore had no creditor to demand the appointment of an administrator. The statement was repeated in the Succession of Graves, 50 La. Ann. 435, 23 So. 788, and in the Succession of Bulliard, 111 La. 186, 35 So. 508. The statement is not consistent with the doctrine of Bryan v. Atchison, Succession of Story, and Succession of Weincke, that article 976 of the Code of Practice means that the judge cannot appoint an administrator, unless a creditor of the succession requires it.
 

 Our analysis of the divers and diverse decisions on this question, of the right of the judge to appoint an administrator when one of the heirs .accepts the succession unconditionally and another claims the benefit of inventory, shows that the court has not always regarded either article 1047 of the Civil Code or article 976 of the Code of Practice as laying down a hard and fast rule. The court has been disposed to judge each case by its own peculiar facts, deferring largely to the judgment and discretion of the district judge. We do not find that he abused his discretion in this case.
 

 The judgment is affirmeds