No. 737

First Circuit

VUILLEMOT ET AL. v. GONSULIN ET AL.

(May 5, 1931. Opinion and Decree.)
(June 30, 1931. Rehearing Refused.)
(October 6, 1931. Writs of Certiorari and Review Refused by Supreme Court.)

L. A. Goudeau, of Lake Charles, attorney for plaintiffs, appellants.

Porteus R. Burke and Weeks & Weeks, of New Iberia, attorneys for defendants, appellees.

LeBLANC, J. In stating the case, we deem it proper to recount briefly, as it appears from the record, some of the history connected with this litigation:

In December, 1917, Adrien Gonsulin, one of the defendants herein, petitioned the then Nineteenth Judicial District Court, sitting in and for the parish of Iberia, for letters of administration on the estate of his deceased grandparents, Francois Gonsulin and Marie Louise Celesie de la Goutrais. In his application he alleged that they had left property consisting of real estate situated in the state of Louisiana; that there were debts both privileged and ordinary due by their estate which rendered an administration of the joint succession necessary. The petition also contains a recital that on December 30, 1906, he had presented a similar application to the court; that it had been duly published; that he had been appointed administrator and qualified as such, furnishing the required bond, etc., but that the file containing all the papers and documents referred to had been lost or mislaid and that nothing had ever been recorded except the bond which he had furnished. Because of the loss of the papers and as no action whatever having been taken under the appointment, he asks that those proceedings be ignored and that his present applica-

tion be considered. It may be timely here to remark that in this last application, the dates of the respective deaths of his grandparents appear in blank.

There was no opposition filed to his application which was duly advertised, and after the expiration of the delays he was appointed administrator. An inventory had been taken as ordered and he furnished the bond fixed by law. An attorney at law was appointed to represent the absent heirs and he qualified by taking the prescribed oath. The only property inventoried as belonging to the joint succession was the undivided two-thirds of a tract of land described as "all that portion of irregular Section 19, Township 17 South Range 11, East, known as the Belle Isle grant or concession, and containing 1218.75 acres." The interest of the succession was appraised at $1,626.67.

Upon the administrator's application, an order was issued by the court for the sale of the property in order to realize funds with which to pay debts. The sale was properly advertised and took place according to law, and the property was purchased thereat by the administrator, Adrien Gonsulin, and Mrs. Branch K. Miller in the proportion of an undivided one-half each, for the sum of $1,900. The administrator then filed his account, which showed that the succession was indebted to him in an amount in excess of $2,600. The account was published and homologated and in due course he was discharged and his bond was ordered canceled.

About five years afterwards, to be exact on January 12, 1922, Adrien Gonsulin and Mrs. Branch K. Miller instituted monition proceedings in the same court in Iberia parish to have their title to the property they had acquired at the succession sale, confirmed. Public notice of these proceed- ings was given by publication for more than thirty days in the official journals of both Iberia and St. Mary parishes. Approximately sixty-five persons appeared to oppose the monition, mostly on the ground that the property had been sold to satisfy post mortem debts, some of which had been created by the administrator himself, and that the sale was illegal further because the administrator who was acting in a fiduciary capacity was precluded from purchasing the property at the sale. They all attacked the legality of the sale and reconvened asking that Gonsulin and Mrs. Miller be ordered to turn over to them their lawful interest in the property. Trial was had on an agreed statement of facts and resulted in a judgment in favor of the plaintiffs confirming and homologating their title to the property and making the same perfect and complete, and rejecting the reconventional demands presented by the various defendants. An appeal was taken by most of the defendants to this court. The appellants perfected their appeal but made no appearance and the judgment of the lower court was affirmed. That was on December 12, 1923.

Some time during the year 1928, Mrs. Dorcienne Gonsulin Gravet, wife of Jules Gravet, claiming to be an heir of Jean Francois Gonsulin, and as such an owner of an undivided interest in the property involved in his succession above referred to, brought suit in the district court in which she attacked the whole of those proceedings as well as the monition proceeding had subsequently. Her contentions were that the succession of her ancestor, Francois Gonsulin, had been duly administered in the court in the parish of St. Martin where he had died in the year 1819, and that as all proceedings therein had long since terminated, the district court of Iberia parish was without jurisdiction

ratione materiae to again or further administer the same. From an adverse judgment in the lower court, an appeal was taken to this court where it was held that because the plaintiff's father, together with numerous heirs of Francois Gonsulin, had asked Adrien Gonsulin to look after and administer the lands of their ancestor, and had contributed funds at his request in meeting the necessary expenses involved, and that the plaintiff herself had acquiesced in those acts after her father's death and had also made similar contributions, she was estopped from attacking the acts of her agent. The exception to the jurisdiction which the plaintiff in her petition had styled an exception to the jurisdiction ratione materiae was said to be in reality an exception to the jurisdiction ratione personae which, it was stated, could be waived, and in fact had been waived by the plaintiff by her conduct and inaction, who moreover was held to have ratified the defendant Gonsulin's action.

It thus appears that these defendants have been called upon twice already to defend their title to the property they purchased in .1917 at the succession sale of Francois Gonsulin and his wife, and that defendant Adrien Gonsulin has been put to severe legal test to retain his interest therein which he had to take in satisfaction of an indebtedness he claimed to have incurred in behalf of his very numerous co-heirs. In view of the apparent honesty with which he rendered his accounting to to the court, which not having been opposed was approved and homologated, and of the opportunity given the heirs, which many availed themselves of by resisting him in the monition suit, and in view also of the length of time that has again intervened before this suit, truly the interminable delays of the law so often spoken of, must appear to him to be an existing fact.

It seems that as to a number of the plaintiffs in this suit, the issue might be readily disposed of on the basis of our decision in the case of Gravet v. Gonsulin, 10 La. App. 553, 119 So. 785, 120 So. 643, as their ancestors had also, like the father of the plaintiff in that case, joined in an authorization to Adrien Gonsulin to administer the property and contributed funds to that end, all of which acts had been ratified by those of the plaintiffs referred to. Indeed, the force given to the monition proceedings in the Gravet suit in sustaining a plea of res adjudicata might again be used with regard to all the plaintiffs in this case without much further consideration, were it not for the earnest effort of their counsel in presenting a case of fraud before the court.

The whole case, as it seems to us, is pitched on the alleged concealment by Adrien Gonsulin of certain knowledge and his failure to disclose facts which he knew existed, with the wilful intention to deceive the court and lead it to grant him his application to administer the succession of their ancestors. His deception, they contend strikes at the very foundation of the proceedings inaugurated by him and carried on in the court in Iberia parish. They charge that he deliberately withheld the dates of the respective deaths of his grandfather and grandmother in his petition with the view of keeping the court in ignorance of the mortuary proceedings in his grandfather's succession which had taken place in · St. Martin parish nearly one hundred years before; they charge that he made no mention of those proceedings with the well considered purpose of hiding them from the court because they showed that the succession had been fully administered and terminated that many

years ago; they charge also that he purposely omitted making reference to various suits and notarial documents which contained judicial admissions constituting unconditional acceptances of their successions by the heirs of Francois Gonsulin and his wife Marie Louise de la Goutrais with the view of leading the court to believe the estates were still open to administration. All of this, they charge, Gonsulin did to collect alleged debts against the succession which did not and could not in reality exist. Hence, we find those proceedings assailed and their absolute nullity invoked in two important particulars: First: That the court was without jurisdiction ratione materiae because the decedent at the time of his death was domiciled in the parish of St. Martin and therefore the only court vested with jurisdiction to administer the estate was the court which sat in that parish; and second: That the Iberia court was without jurisdiction further because the succession had already been administered and closed and that the defendant, if he had any claims, could no longer proceed against the succession but had to proceed against the heirs individually.

The first plea to the jurisdiction was one of the questions considered in the case of Mrs. Gravet in 10 La. App., and we see no reason why it should be in-jected again merely for the sake of repeating what was said in that decision.

We are left therefore, with only the question of jurisdiction as raised in the second particular which presents the direct proposition as to when does a succession cease to exist. If the succession of Francois Gonsulin had already been administered and closed by reason of the proceedings in St. Martin parish; if it was no longer a legal entity which could be brought into court, then clearly the pro-ceedings in Iberia parish brought by Adrien Gonsulin were just idle formalities which have no legal base on which to stand. That we believe is a legal proposition which is well settled. The question then is, was there any such administration and closing of the succession in St. Martin parish under the proceedings thereof over one hundred years ago, and, if there was not such closing of the succession, have these heirs, by any act of theirs, accepted the succession purely, simply and unconditionally, in such way as to fore-close the rights of any creditor against the estate itself and force him to resort to a proceeding against them individually?

The answer to the first part of this question, that is, whether or not there was a closing of the succession under the proceedings taken in St. Martin parish, depends upon what was done and accomplished by those proceedings. At the most, our examination reveals that there was nothing done to justify the conclusion that a succession had been administered and closed. What of that record appears in the record before us is of very little consequence as far as it relates to the opening and winding up of an estate. No administrator, such as contemplated under the Code was ever appointed. Some party who styles himself agent, filed a tableau of distribution which apparently was homologated after due notice of its filing had been given by publication. Such was the condition of the record when in 1868 the parish of Iberia was formed by act of the Legislature from territory carved out of the area which comprised St. Martin parish. Under the provisions of that act, as shown in the Gravet decision all court proceedings concerning property in the newly formed parish had to be transferred to the new parish of Iberia. In this new parish, there appears, as far as the rec-

ord shows, no steps taken in the succession of Francois Gonsulin until the time when it was opened by the defendant herein. Whilst we recognize the principle as stated in the various cases cited by counsel for plaintiffs that the law contemplates an early settlement of a succession and that after it has been closed the heirs become the owners of the property and are individually liable for its debt, still we believe that by the closing of the succession the law means the due observance of all the legal formalities required, and that extends to the payment of all debts, followed by the discharge of the administrator and the cancellation of his bond and the placing in possession of the heirs. In all of the cases cited, the court refers to the placing of the heirs in possession or to the partition of the property among them, when it holds that the succession was closed and had ceased to exist as a legal entity. In Freret v. Freret, 31 La. Ann. 506, there certainly had been far more done than we find was done in this succession proceeding in St. Martin parish. The heirs in that case had been put in possession by a judgment of court. In Succession of Thibodeaux, 38 La. Ann. 716, the court held that the record fully established that there were no debts due and that the heirs had been placed in possession of the property, and that therefore there was no reason for an administration. In Succession of Aronstein, 51 La. Ann. 1052, 25 So. 932, there was no judgment placing the heirs in possession, but an account which had been opposed was homologated by judgment of court, which is referred to as a final judgment, and the distribution of assets according to the account followed. At least there appears to have been a distribution of the assets of the succession, not the mere filing of a tableau and its homologation by the clerk of court as appears in the proceedings had in St. Martin parish in this case. Viewed from the standpoint of that record alone, we do not believe, as already stated, that the succession of Francois Gonsulin had been terminated, and, if it was not so terminated, it now remains to be determined whether by any act of the heirs evidencing an unconditional acceptance it was closed in that manner.

Here again we are confronted with an intricate question such as generally arises in all matters concerning jurisdiction. In the words of the Supreme Court in Freret v. Freret, 31 La. Ann. 506, it is one of those vexatious questions which is not very useful, and "upon which hinges the validity of protracted legal proceedings, and which after all involve no permanent legal principle, worthy to engage the intellect, but only a verbal construction, that is soon rendered of no service, by the adoption of another phraseology." Might we not also indulge the same hope that court did, that the forum of jurisprudence might be fixed beyond dispute.

It is clear, as appears from a consideration of the provisions of article 988 of the Revised Civil Code, as well as of some of the authorities cited, that there may be an unconditional acceptance of a succession by the heirs by an express declaration made by them in some judicial proceeding or in some authentic or private instrument. Samford v. Toadvine, 15 La. Ann. 170; Brashear v. Conner, 29 La. Ann. 347. We may mention, en passant, that it is equally true that an acceptance of a succession under those circumstances must appear in terms so clear and distinct as to leave no doubt as to the real intention to accept under the full responsibilities that attach to an acceptance pure and simple. The heir must make it plain by his dec-

laration that he has accepted in such manner that he is ready and willing to assume the burdens of the estate as well as to enjoy its advantages. Mumford v. Bowman, 26 La. Ann. 413; Griffin v. Burris, 109 La. 219, 33 So. 201. Article 990, Revised Civil Code, prescribes as a condition necessary, "that the intention should be united to the fact, or rather manifested by the fact, in order that the acceptance be inferred." If we were to judge the intention of some of the heirs in this case by the subsequent facts as manifested in their refusal to pay claims presented by their agent for the administration of their property, we would be prompted to place them in that category of heirs who are willing to accept the succession for what benefit they may derive from it, but are unwilling to do their part in meeting some of its obligations. There is hardly any doubt, we presume, that, had they all paid their contribution to their agent, Adrien Gonsulin, the administration of this succession would never have been provoked.

Be all that as it may, however, we do believe that, in some of the judicial proceedings offered in evidence, particularly the suit of Carlos Greigg et al. v. Heirs of Gonsulin, in which Adrien Gonsulin was a defendant and agreed with the others to the partition therein demanded, the effect of the declarations made can hardly leave any doubt about there being an acceptance pure and simple of the succession, and ordinarily the creditors of the estate would have been relegated to an action against the heirs to enforce the claims which they might have had. But it must be borne in mind that here the nullity of the proceedings is based on the lack of jurisdiction of the court in Iberia parish to entertain the application for administration at all, and this especially because of the alleged fraud of Adrien Gonsulin in making the application.

We believe that these plaintiffs are confusing the jurisdictional power of the court with one of its discretionary rights. In 1906, when Gonsulin applied for administration, the succession of Francois Gonsulin had really never been administered and that of his wife had not been opened. At that time the proper forum to provoke the administration was in Iberia parish. The same condition prevailed in 1917, when he presented a second application. That court being vested with jurisdiction over the estate, in case an administration were necessary, was the competent court to pass upon the application that had been presented before it. The court was open to Gonsulin, and we can think of no way in which he could have been deprived of his right at least to file his petition, and on order properly granted advertise his application for administration. This done, it then became a matter of discretion with the court, after hearing any opposition that might have been urged, to say whether he should be appointed or not. There seems to be no hard and fast rule relative to the appointment of an administrator for a succession where some of the heirs have accepted unconditionally or where there are no debts. It is a matter which addresses itself entirely to the discretion of the court. See Succession of Comeau, 158 La. 372, 104 So. 119, 121, wherein the court said:

"Our analysis of the divers and diverse decisions on this question, of the right of the judge to appoint an administrator when one of the heirs accepts the succession unconditionally and another claims the benefit of inventory, shows that the court has not always regarded either article 1047 of the Civil Code or article 976 of the Code of Practice as laying down a hard and fast rule. The court has been

disposed to judge each case by its own peculiar facts, deferring largely to the judgment and discretion of the district judge."

In Succession of Theriot, 116 La. 25, 40 So. 519, first syllabus reads:

"The question as to whether a succession shall be placed under administration is to a very considerable extent submitted to the sound discretion of the trial judge, to be exercised for the benefit of all parties in interest, and especially for the benefit of parties advancing claims against the succession. Where there are 30 or more heirs in a small succession, some of whom are minors and others majors, and some residing out of the state, parties asserting rights as creditors should not be driven to personal actions against all of these different heirs. They are entitled to have their claims passed upon as quickly and as economically as possible in Louisiana in a single suit."

That language is strikingly pertinent in this case, when it is considered that we are also dealing with a small estate and that the heirs, numbering at least two hundred, are scattered in different parishes of the state and some reside outside.

That there was no abuse of discretion in this case on the part of the trial judge is apparent from the fact that there was no opposition presented to Adrien Gonsulin's application for administration. It was duly published according to law, and no one raised any objection. His petition contained an averment that the succession owed him a considerable sum of money and yet no one denied it. His account showing these debts was filed in court and notice of its filing given as provided for by law, and still all remained silent. It is not until five years later, when in the monition suit he again gives public notice of all that had transpired and invites them all again to come into court to assert any rights or objections they may have, that

some of them appear to question his claims, and after trial of their opposition, his title to the property is confirmed by the court. That judgment is appealed from by some, but even they abandon the contest by failing to prosecute the appeal. It would seem, therefore, that these heirs have had their "day in court," and that, by their silence and inaction in the original proceedings instituted in 1906 and reinstituted in 1917, and their acquiescence in the judgment in the monition suit by abandoning the appeal, they are now estopped from invoking their nullity. Under Revised Statutes, secs. 2375 and 2376, the judgment in the monition suit was of itself conclusive evidence that the monition had been regularly made, and it has now attained the force of res adjudicata.

But counsel for the plaintiffs confidently asserts that they have uncovered the fraud and deception practiced by Adrien Gonsulin on the court of Iberia parish in his determination to obtain title to this land, and for that reason, above all, the proceedings brought and conducted in his name are stricken with absolute nullity. They further urge his knowledge and judicial admissions and declarations in various proceedings and acts showing that the succession no longer existed and that the property had passed to the ownership of the heirs, as res adjudicata and estoppel to the defenses presented by him and his co-defendant in this suit. The record, however, does not bear proof of the fraud they allege, and the letter of Senator Edwin S. Broussard, which by agreement was accepted as his testimony in the case, disproves any fraud whatsoever. Senator Broussard himself is one of the heirs of Francois Gonsulin, and his letter states that it was on his advice that Adrien Gonsulin applied for the administration of the succession in order to have his expenses,

incurred in attending to the property, reimbursed, after all other efforts to collect them had turned out to be futile. Besides, it is not shown that Adrien Gonsulin had any more knowledge of the facts and matters he is charged with having concealed from the court than any of the other heirs. Most of these matters were of judicial record long before the sale of the property in the succession proceedings and the monition suit. The same knowledge of their legal effect with which Adrien Gonsulin is charged they are presumed to have had, and it strikes us that now, these many years after all of these proceedings regularly conducted in a court of competent jurisdiction have been concluded, it is too late to bring up this issue.

The judgment of the lower court sustaining the defendants' pleas of res adjudicata and estoppel and rejecting the plaintiffs' demand and also the latters' pleas of res adjudicata and estoppel is correct, and it is therefore affirmed.

ELLIOTT, J. (concurring). The petition of the plaintiffs, with the documents annexed to and made part thereof shows that the territory where Jean Francois Gonsulin and Marie Celeste de la Gautrais, his wife, had lived and died in the parish of St. Martin, and in which their respective successions had been opened by their death, had become, at the time their successions were administered, a part of the parish of Iberia.

It therefore appears therefrom, when an administration was prayed for in 1917, none having taken place in the parish of St. Martin, that the Iberia court was the competent court to authorize it to be done. Code Prac. arts. 75, 76, 86, 87, 90, 92, 93. It had succeeded to the jurisdiction of the St. Martin court in that respect. Act 206 of 1856.

A similar question of jurisdiction was determined in favor of the competency of the Lafayette parish court in the case Grevemberg v. Bradford, 44 La. Ann. 400, 10 So. 786. The parish of Lafayette was created with territory taken for the purpose from the parish of St. Martin. Acts 1823, p. 6. The jurisdiction of the Lafayette parish courts was fixed with language almost exactly like that used in fixing that of the parish of Iberia.

The act creating the parish of Iberia had the effect, as to estates which had been opened by death in the parish of St. Martin, but not administered, of giving jurisdiction to the parish of the situs, as to all court matters, not performed in the parish of the former situs.

The cases Harang v. Harang, 7 Mart. (N. S.) 51; Patouillet v. Patouillet, 2 La. 270; Forstall v. Forstall, 4 La. 214, and Beale v. Walden, 11 Rob. 67, were decided previous to and therefore can have no controlling effect on the act creating the parish of Iberia. The Iberia court, having been the competent court to authorize an administration of the Gonsulin estates in 1917, it follows that the judgment of that court, homologating the monition proceedings in question, no matter whether right or wrong, cannot be set aside for error now. Defendant's plea of res adjudicata, based on the judgment of the Iberia court, homologating the monition proceedings, applies, not only to the Gonsulin heirs who appeared and opposed the proceedings, but to all the present plaintiffs who could have appeared and did not. Revised Statutes, sec. 2370 et seq.; Montgomery v. Samory, 99 U. S. 482, 25 L. Ed. 375.

I therefore respectfully concur in the majority decision.