No. 951.

MRS. NANCY M. FRASER, WIFE, ETC., VS. PAUL ZYLICZ.

The tutor of minors is a proper party to sue for the removal of an under-tutor.
Where the tutor of minors, who has been appointed by the probate court of one
    parish, removes with the minors and resides in *another* parish, the probate court
    of the latter parish will have jurisdiction of a suit brought by him to remove
    an under-tutor.
Property of minors, *unless sold to pay the debts of the succession*, must bring the full
    amount of its appraisement. Otherwise, its sale will be annulled.
Actions to set aside public sales on account of any informalities connected with
    them, are prescribed, as to *all* persons, in five years.

APPEAL from the Third Judicial District Court, parish of St. Mary.
Train, J.

*Fred Gates*, for plaintiff and appellant.

*A. L. Tucker* and *D. Caffrey*, for defendant.

The opinion of the court was delivered by

SPENCER, J. The material facts of this case are as follows:

Nancy M. Theall, wife of Malcom A. Fraser, died in 1851 in St. Mary
parish, where they resided, leaving four children, issue of the marriage,:
to wit: plaintiff and three others.

The husband, Fraser, qualified as natural tutor of his minor children,.
and James Lacey, of St. Mary, was appointed the under-tutor by the
probate court of said parish. An administrator was appointed to the.
estate of the deceased wife, and, after settlement, the balance, some five
thousand dollars, in his hands was paid over to the tutor. There re-
mained also property of the wife's paraphernal estate, consisting of a.
house and lot in the town of Franklin, in said parish, and several slaves..
About 1853 the tutor and father removed to and became domiciliated in
the city of New Orleans, taking his minor children with him.

In December, 1854, the tutor applied to the Second District Court of'
Orleans to convene a family meeting to advise as to the necessity and·
propriety of selling the said lot and slaves. The meeting was ordered
and the under-tutor notified to attend. He failed and neglected to do·
so, and declined to resign. Thereupon the tutor instituted suit in the·
said Second District Court to remove him from office. After having·
been cited and making default, he was destituted by decree of said court.

Thereupon another under-tutor was appointed. The family meeting·
convened and advised and recommended the sale as necessary to edu-
cate and maintain the minors. Their deliberations were duly homolo-
gated and a decree rendered directing the sale as advised. A commission
issued to the sheriff of St. Mary, and the property, after due and legal
advertisement, was sold. It appears by the inventory taken in 1851
that this house and lot were appraised at twelve hundred dollars and

the slaves at twenty-six hundred dollars. At the sale by the sheriff the house and lot were adjudicated to one Stevens at eight hundred dollars,. and the slaves (omitting one rot sold) brought $3166. This sale was. made on the ——, 1855.

The plaintiff sues to recover this house and lot, on the ground that the proceedings were illegal and .void. She claims that she is sole owner,. and entitled to recover for the reasons:

First—That the tutor was without capacity to stand in judgment for removal of the under-tutor.

Second—That the court of St. Mary alone had jurisdiction of a suit for his removal.

Third—That the minors' property could not be sold for less than its. appraisement.

The defendant sets up various defenses, which it is not necessary to specify, and calls in warranty his vendor, who in turn calls his vendor, etc. The main points of defense are that the proceedings by which the property was sold were regular; that the decree of sale by the Second District Court, having jurisdiction, protected the purchaser against all irregularities anterior to judgment and prescription.

First—As to the capacity of the tutor to sue for the removal of the under-tutor: The plaintiff contends that that suit could only be brought by.a curator *ad hoc*, appointed by the court, and cites 10 La. 82. That case simply decides that the uncles of a minor, as such, could not sue to destitute an under-tutor, as they did not represent the minor. Our Code is silent as to the person who shall bring such suit, but provides that any person knowing cause for the removal of tutors may give informa-tion to the judge, who may appoint a curator to bring the suit. It seems. to us that the tutor, representing, above all others, the minor, is emi-nently a proper person to provoke the removal of the under-tutor who fails in his duty. Because a curator appointed by the judge may also do so is no argument against the right of the tutor. It is only an addi-tional means provided by law to secure fidelity in its officers.

The second ground, that the probate court of St. Mary alone had ju-risdiction to remove the under-tutor, is, we think, untenable. The un-der-tutorship is a mere accessory to the tutorship; and as it is not dis-puted that the Second District Court of New Orleans was seized of jurisdiction of the tutorship from the moment the natural tutor and his children became domiciliated there, it would seem that its jurisdiction extended to all of its incidents. Any other construction of the law would lead to infinite confusion. Article 1013 of the Code of Practice must be construed in connection with other provisions of the law, and is not mandatory in its terms. It says "tutors, etc., *may be* removed by the court of probates which appointed them." It has been held that

" the court of the minor's domicile must accept the under-tutor's resignation, and appoint a successor. So, the minor's domicile being attendant on the tutor's, when the latter, after appointment of an under-tutor, removes to another parish, to the judge of the latter must the under-tutor address his resignation." C. C. 289; 14 La. 478; 2 R. 418; 14 An. 565.

Besides, this objection as to the right of the tutor to sue to remove the under-tutor goes to matters anterior to judgment, and, as we hold that the Second District Court properly took jurisdiction, can not affect a purchaser under a decree of said court. It is well settled that a purchaser is not bound to look beyond such decree.

Third—The only irregularity or illegality subsequent to judgment that appears or is complained of is that the house and lot sold for less than its appraised value. The property sold was that of minors. Article 342 of the Civil Code declares that "the minor's property can not be sold for less than the amount of its appraisement." It does not appear that any other appraisement than that in the inventory of 1851 was ever made, and we must presume that that was the appraisement under which the sale took place. As we have seen, the property ordered to be sold brought in the aggregate more than its appraisement, but this particular house and lot only brought and was adjudicated for two thirds of its appraisement. Defendant insists that this is a substantial compliance with the law, and shows that the property was not sacrificed; and that this fact, coupled with the further fact that Trowbridge, one of the subsequent purchasers thereof, sold it some few years afterward for nine hundred dollars, justifies the inference that it brought all it was worth. We are aware that this court has held that the sale of a minor's property to pay the ancestors' debts may under certain circumstances be made for less than its appraisement; but we think the property in those cases was rather that of a succession than that of a minor, and that the law as laid down in articles 990, 991, and 992 of the Code of Practice, governing sales of succession property, received a most liberal interpretation in the cases where this court so held.

While, upon the doctrine of *stare decisis*, we would be loth to depart from the rule that succession property sold to pay debts may, on first offering, be sold for less than its appraisement, provided that the price brought be in fact its full value, though less than its appraisement, we are not disposed to extend the rule to property belonging exclusively and strictly to minors. We prefer to adhere to the letter of the law, that it can not be legally sold for less than its appraisement. C. C. 342, *et seq.*

But the defendant interposes the plea of prescription to this action to annul the sheriff's sale of this property in 1855.

By act of 1835, re-enacted in 1855, and now incorporated in the Revised Civil Code as article 3543, it is provided that "all informalities

Mrs. Nancy M. Fraser vs. Zylicz.

connected with or growing out of any public sale, made by any person authorized to sell at public auction, shall be prescribed against by those claiming under such sale after the lapse of five years from the time of making it, whether against minors, married women, or interdicted persons." It is manifest that the adjudication of a minor's property for less than its appraisement is not absolutely null, but only annullable. The adjudication of it by the sheriff for less than its appraisement is an informality and illegality of the sale, like that made without advertisement, or with an insufficient advertisement, or without appraisement, and the like. We think the defendant is protected by this prescription, as it runs against minors, and more than twenty years had elapsed between the day of the sale and the institution of this suit.

As we have stated, this sale was made on the application of the plaintiff's tutor, recommended by a family meeting, and approved and ordered by a competent court, for the purpose of providing means of educating and maintaining her and the other minor children. Are we to *presume* that all this was a fraud? that, after receiving the proceeds of this sale, plaintiff's father, dishonestly and in disregard of his official oath and duty, diverted these funds from the objects to which they were destined and converted them to his own use? If not, and if the presumption is in favor of his having dealt honestly with his wards and fulfilled his duties, then, in the absence of contrary proof, we must presume that the money proceeding from said sale inured to plaintiff's benefit, and she could not recover without a previous restitution of the price.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be affirmed with costs of both courts.