169 So. 78

**BUILLARD et al. v. DAVIS et al.**

No. 33331.

April 27, 1936.

Rehearing Denied May 25, 1936.

L. A. Goudeau, of Grand Coteau, Alfred D. Danziger, of New Orleans, and N. A. Quintanilla, of San Antonio, Tex., J. Sully Martel, of Franklin, Hubert M. Ansley, of New Orleans, and Mallott & Koonce, of Houston, Tex., for appellants.

Isaac S. Heller and J. C. Henriques, both of New Orleans, Paul Kramer, of Franklin, Porteous R. Burke and Weeks & Weeks, all of New Iberia, and Dudley Yoedicke, of New Orleans, for appellees.

FOURNET, Justice.

This is a petitory action to recover all of that portion of Sec. 19, Tp. 17 S., R. 11 E., lying east of Doctor's Bayou in St. Mary parish, La., containing 1218.75 acres.

Plaintiffs claim title by inheritance from their ancestors, Francois Gonsoulin and his wife, Marie Celeste de la Gautrais, who died in 1819 and 1830, respectively, and also from four of their children, namely, Marie Ann PouPonne Gonsoulin, deceased wife of Sebastain Castello, Margaret Adelaide Gonsoulin, deceased wife of Henry Greigg, Celestine Gonsoulin, and Clair St. Clair Gonsoulin.

The defendants claim title as successors of Adrien Gonsoulin and Mrs. Branch K. Miller, who purchased on April 6, 1918, a two-thirds interest in the property at the administrator's sales in the succession of Francois Gonsoulin and his wife, and a one-third interest as a result of an administrator's sale on September 28, 1918, in the succession of Clair St. Clair Gonsoulin.

The facts as disclosed by the record are that on March 20, 1783, letters patent were applied for and on August 21, 1878, issued to Dautrieve Dubuclet, Benoit de St. Clair, and Francois Gonsoulin to the tract of land known as the Island of Belle Isle, situated in the parish of St. Mary. On the 27th day of April, 1822, Benoit de St. Clair, by

notarial act of donation inter vivos, conveyed his one-third interest in and to Belle Isle to Clair St. Clair Gonsoulin, one of the sons of Francois Gonsoulin, and on the same day and before the same notary public, Marie Martha Bienvenue Dubuclet and Joseph Dubuclet, surviving widow and sole heir of Dautrieve Dubuclet, conveyed their one-third interest to the twelve children of Francois Gonsoulin, issue of his marriage with Marie Louise Celeste de la Gautrais. Francois Gonsoulin died at his home and place of residence in St. Martin parish in 1819 and his succession was duly opened to probate on the 16th day of April, 1823, in the parish of St. Martin, bearing No. 470 of the probate docket of that court. It does not appear that the widow and heirs of the deceased were ever formally placed in possession and the succession closed.

The record does show, however, that in 1823, in the suit entitled "Heirs of Gonsoulin v. Walter Brasher," bearing No. 355 of the district court of St. Mary parish, the surviving widow and children of Francois Gonsoulin, in their capacity as such, instituted a petitory action to recover Belle Isle, which includes the property in question.

Subsequently, in the year 1830, Mrs. Gonsoulin also died at her home and place of residence in the parish of St. Martin, and although her succession was never formally opened to probate, the children born of her marriage to Francois Gonsoulin, acting through J. Bte. Luzincourt Gonsoulin, sold property which formerly belonged to the community of acquets and gains of their deceased ancestors for the purpose of

paying debts and partitioning the same, as is evidenced by a tableau of distribution and partition filed in the office of the clerk of court and ex-officio recorder for the parish of St. Martin on the 9th day of July, 1854, under No. 470 of the probate docket of that court.

In the year 1898, the heirs of Francois Gonsoulin and his wife, and Clair St. Clair Gonsoulin, including Andrien Gonsoulin, one of the defendants' authors in title, filed a joint petitory action against the Gulf Company in the district court of St. Mary parish to recover Belle Isle, and in their petition they declared that they were the sole heirs of Francois Gonsoulin and his wife; that their ancestors' successions owed no debts; and that they accepted the same unconditionally. On application of the Gulf Company, this suit was transferred to the federal District Court, and in its answer it disclaimed all that portion of Belle Isle lying east of Doctor's Bayou, which is the property plaintiffs herein now claim. The suit resulted in a judgment rejecting the plaintiffs' demands. Gonsoulin's Heirs v. Gulf Co. (C.C.A.) 116 F. 251.

Adrien Gonsoulin, acting for himself and as agent of the other heirs of Francois Gonsoulin and his wife, by virtue of powers of attorney from them, on the 11th of January, 1904, assigned to David Todd and Branch K. Miller, their attorneys in the suit against the Gulf Company, an undivided one-twelfth interest in and to the property disclaimed by the company in the said suit.

It also appears that Carlos Greigg and other heirs of Francois Gonsoulin and his

wife, on the 25th day of April, 1908, instituted partition proceedings in the district court of St. Mary parish, alleging that they and the other heirs of Francois Gonsoulin and his wife were co-owners in indivision of the property in question, together with the successions of Branch K. Miller and David Todd. Andrien Gonsoulin and others filed an answer in that suit in which it was admitted that the ownership of the land was as set out in plaintiff's petition. This suit was discontinued.

On the 14th of January, 1918, Adrien Gonsoulin, pursuant to his application to the Nineteenth judicial district court in and for the parish of Iberia, was appointed and qualified as administrator of the successions of Francois Gonsoulin and his wife, the proceedings bearing No. 2095 of the probate docket of that court. Thereafter, in his capacity as administrator, he petitioned the court to sell the property of the successions for the purpose of paying debts. A detailed list of the debts is annexed to his petition and shows that all the items therein enumerated bear dates subsequent to 1898. The only property inventoried was a two-thirds interest in Belle Isle. On the authority of the court's order, after due advertisement, an undivided two-thirds interest in Belle Isle was sold on the 6th day of April, 1918, to Mrs. Alice G. Miller and Adrien Gonsoulin. A few months thereafter Adrien Gonsoulin applied to the same court to be appointed administrator of the succession of Clair St. Clair Gonsoulin, and on the 12th of July, 1918, he was appointed and qualified as such in proceedings No. 2125 of the probate docket of that court. The property inventoried in the succession, comprising an undivided one-third interest in Belle Isle, was sold by order of court to pay debts and adjudicated on September 28, 1918, to Adrien Gonsoulin.

On January 12, 1922, monition proceedings were instituted by Adrien Gonsoulin in the district court of Iberia parish to perfect title to his one-third interest in the property and,, after opposition by one heir, judgment was rendered in his favor on March 31, 1922, confirming his title. Subsequently, both Adrien Gonsoulin and Mrs. Alice G. Miller instituted monition proceedings in the same district court, and on May 20, 1922, after opposition thereto had been filed by a number of the Gonsoulin heirs, judgment was rendered confirming their title to an undivided two-thirds interest in the property. The opponents appealed to the Court of Appeal, First Circuit, and on December 12, 1923, that court affirmed the judgment of the lower court.

On March 13, 1928, Mrs. Dorcienne G. Gravet filed suit against Adrien Gonsoulin and Mrs. Branch K. Miller in the district court for Iberia parish to have set aside the administrator's sale to them in the proceedings of the succession of Francois Gonsoulin and his wife, No. 2095 of the probate docket of that court. The district court maintained pleas of prescription and estoppel filed by the defendants, which judgment was affirmed by the Court of Appeal, First Circuit. This court refused to review the judgment. Gravet v. Gonsoulin, 10 La.App. 553, 119 So. 785, 120 So. 643 (on rehearing).

On July 11, 1929, Mrs. Annette Durand Vuillemot and other heirs of Francois Gonsoulin and his wife filed another suit in the same court to have set aside the administrator's sale to Adrien Gonsoulin and Mrs. Miller in the successions of Mr. and Mrs. Gonsoulin, bearing No. 2095 of the probate docket of that court. The district court, on September 6, 1930, maintained the defendants' plea of res adjudicata, prescription of one, five, and ten years, acquiescence and staleness, and an exception of no cause or right of action, which judgment was affirmed on appeal to the Court of Appeal, First Circuit, and a writ of review refused by this court. Vuillemot v. Gonsulin, 17 La.App. 661, 134 So. 419.

The defendants in this case filed several dilatory pleas, i. e., a motion for bond for costs, prayer for oyer, exceptions of vagueness and of want of proper parties, which were overruled by the district judge. These exceptions have apparently been abandoned as they have not been urged on appeal. Later defendants filed exceptions of no cause or right of action which were also overruled by the district judge. The defendants Frank P. Davis and Belle Isle Corporation then filed an answer and called in warranty their authors in title. All the defendants and the parties called in warranty filed exceptions of res adjudicata; estoppel, acquiescence, and staleness; prescription of one, three, five, and ten years, and reurged the exceptions of no cause or right of action. Plaintiffs subsequently filed pleas of res adjudicata and estoppel, together with numerous documents annexed thereto.

The matter was submitted on these issues after the introduction of certain documentary evidence, and the trial judge dismissed plaintiffs' pleas of res adjudicata and estoppel and maintained the pleas of (1) res adjudicata, (2) estoppel, acquiescence, and staleness, (3) prescription, and (4) the exceptions of no right or cause of action filed by defendants. Plaintiffs have appealed.

Plaintiffs' plea of res adjudicata is based upon the judgment rendered by the United States Circuit Court of Appeals in the case of Gonsoulin's Heirs v. Gulf Co., supra, and the plea of estoppel is based upon certain alleged judicial confessions of the defendants and their authors in title.

On this point defendants contend that plaintiffs' procedure, if their contention be well founded, was to move for judgment on the face of the pleadings and not by way of exception.

■ From an examination of the pleadings, we find that the judgment and admissions referred to antedate defendants' alleged purchases and, therefore, could not have precluded them from subsequently acquiring an adverse title by mesne process or otherwise, and plaintiffs' pleas of res adjudicata and of estoppel were, therefore, properly overruled by the trial judge.

The main defense is based on the plaintiffs' divesture of title (1) as a result of the sales of the property in the succession of Mr. and Mrs. Francois Gonsoulin, being No. 2095 of the *probate docket of Iberia parish,* and the succession of St. Clair Gonsoulin, being No. 2125 of the *probate docket of the same parish,* under date of April 6, 1918, and September 28, 1918, respectively, and the judgment confirming the sales in the monition proceedings filed by the purchas-

ers in the district court for the parish of Iberia; (2) in addition to the foregoing, it is said that the plaintiffs having acquiesced in these proceedings by their inaction and failure to promptly assert their rights and having permitted these matters to become stale are completely barred to recover; and (3) in any event the defendants contend that as to Miss Gravet, daughter of plaintiff in the suit of Gravet v. Gonsoulin et al., and as to the plaintiffs in the suit of Mrs. Villemot et al. v. Gonsulin et al., and as to those who opposed the monition proceedings filed by Adrien Gonsoulin and Mrs. Alice G. Miller, the judgment in these respective matters are res adjudicata as to them and a bar to their recovery.

It is plaintiffs' contention that Francois Gonsoulin's succession was legally opened by his death in 1819, and judicially administered in 1823 *in the parish of St. Martin;* that under the jurisprudence of this court and the law then in effect, those proceedings irrevocably vested exclusive jurisdiction ratione materiae over his succession *in the parish of St. Martin;* that his heirs, assuming the quality of such, having legally and expressly accepted his and his wife's successions by their many acts of ownership or heirship, beginning in the year 1823 and more specifically in the suit of Gonsoulin's Heirs v. Gulf Co., the successions of Francois Gonsoulin and wife as an active probate matter had ceased to exist and were incapable of further administration in 1917 or at any other time or place, in the parish of Iberia or elsewhere; that the district court for the parish of Iberia, being without jurisdiction ratione materiae, the attempted opening of those successions in that par-

ish and the alleged sale of plaintiffs' property in these proceedings are null and void ab initio, not subject to ratification, cannot be made the basis of prescription, estoppel, and acquiescence.

In the case of Decuir et al. v. Decuir et al., 105 La. 481, 29 So. 932, 934, we held that if a court "which rendered the judgment and ordered the sale upon which defendants herein rely, was without jurisdiction ratione materiæ to entertain the suit, the judgment and the sale predicated upon it are absolute nullities,—the judgment never existed as a judgment." And in the opinion it is stated:

"If a judgment be *an absolute nullity,* this nullity may be invoked by any one against whom it is interposed, at any time and anywhere. This proposition is supported by a long line of decisions, of which the following are some: Edwards v. White, 29 La.Ann. [647] 650; Alter v. Pickett, 24 La.Ann. [513] 515; Bernard v. Vignaud, 1 Mart.(N.S.) [1] 8; Quine v. Mayes, 2 Rob. [510] 511; Williams v. Clark, 11 La.Ann. 761; Simpson v. Hope, 23 La.Ann. 557; Madden v. Fielding, 19 La.Ann. 505; Walworth v. Stevenson, 24 La.Ann. 251; Conery v. Rotchford, 30 La.Ann. 692." (Italics ours.)

Counsel for defendant in argument and in their brief said that "it is clear that the purchaser at a succession sale need not look beyond the jurisdiction and the court order ordering the administration and sale," and cite the cases of Granger et al. v. Hebert et al., 121 La. 1045, 1046, 46 So. 1012, 1013, and the Succession of Theze, 44 La.Ann. 46, 48, 10 So. 412.

In both cases cited by counsel, the court had jurisdiction of the res, for in the case of Granger v. Hebert, supra, the court said:

"It is undisputed that Marcel Granger [deceased] lived and died in the parish of Calcasieu, and that the property in question, constituting part of his estate, is situated in that parish; and *it is indisputable that the district court for the parish of Calcasieu was vested with jurisdiction with respect to the opening and settlement of his succession.*" (Italics ours.)

In the Succession of Theze, supra, this court said that "as the proceedings appear to have been perfectly regular, and *as the court evidently had jurisdiction of the res,* the objections of the adjudicatee do not appear to be jurisdictional and are therefore unavailing to him," and in the course of the opinion further stated:

"It has long been *the settled jurisprudence of this court that a purchaser at a judicial sale is held bound to 'look to the jurisdiction of the court granting the order of sale,'* but the truth of the record concerning matters within its jurisdiction cannot be disputed." (Italics ours.) Beale et al. v. Walden, 11 Rob. 67; Webb v. Keller, 26 La.Ann. 596; Fraser v. Zylicz, 29 La.Ann. 534, 536.

It is perfectly evident and clear that the authorities cited by counsel do not avail the defendants in the present case, for it is jurisdiction of the res which plaintiffs contend the court of Iberia was lacking when the successions of Mr. and Mrs. Francois Gonsoulin and of Clair St. Clair Gonsoulin were opened there in 1918.

In an early case, Succession of Prevost, 12 La.Ann. 577, affirmed by the United States Supreme Court, Prevost v. Greenaux, 19 How. 1, 15 L.Ed. 572, this court said:

"By the fiction of law le mort saisit le vif, the heirs' right and obligations relate back to the ancestor's death and must be determined by the law then existing, and not as subsequently modified when those rights and obligations are enforced."

We must, therefore, refer to the Civil Code of 1808 to determine the rights and obligations of the heirs of Francois Gonsoulin at the date of his death in September, 1819. Under the title "In What Manner Successions are Opened," articles 58 and 59 of the Code of 1808 provide:

"Article 58—The succession, either testamentary, or legal, or irregular, becomes open by death."

"Article 59—The place where the deceased has died, is where the succession is considered to be opened."

The facts and pleadings in the case of Beale v. Walden, 11 Rob. 67, were very similar to those with reference to Francois Gonsoulin in the case at bar. Beale had died in the parish of Orleans in 1820 where his succession was judicially administered upon in 1823. The parish of Jefferson was created in February, 1825, out of territory formerly comprising the parish of Orleans, and the place of residence of the deceased, upon the division was embraced within the newly created parish. At the time of his death, the law in existence was the Code of 1808, which

was subsequently revised in 1825, after Beale's death, and after his succession had been judicially opened and administered under the provisions of article 59 of the Code of 1808, in the parish of Orleans. The issue presented was the court's jurisdiction ratione materiae, as between the probate courts of the parish of Orleans, where the deceased Beale had died in 1820, and the parish of Jefferson, at the time of the filing of the suit in 1844 or 1845, which then embraced the residence of the deceased. In the opinion the court stated:

"The defence to this action   *   *   * is, that the defendant is in possession, and is the owner under a valid and sufficient title; that on the 7th of March, 1831, the property was legally sold and adjudicated to the defendant, and a conveyance signed on the 19th of the same month; that the sale was afterwards homologated on monition; that the sale was necessary to pay certain pressing debts; and that the price paid was applied to pay those debts. *   *   * Finally, he pleads prescription. *   *   *

"The succession of Thomas Beale, senior, was opened in a legal sense by his death, which took place in the parish of Orleans before its division. *If the Court of Probates had already taken cognizance, before the parish of Jefferson was set off, its jurisdiction was not divested by the separation. This point was expressly decided in Patouillet v. Patouillet (2 La. 270).* In the case of Forstall v. Forstall et al. (4 La. 214), in which the question arose, whether the Probate Court for the parish of Orleans, in which the succession was opened under the old Code, but where no proceedings were had before the amendments of the Code which adopted a different rule, or the court in which the succession was opened under the new Code, had jurisdiction, this court held that the Court of Probates did not lose its jurisdiction, although no proceedings were had until after the promulgation of the new Code, which repealed that provision of the old. In Harang v. Harang et al., 7 Mart.(N. S.) 51, the court held, that when a parish is divided, the court of the parish composed of that in which the deceased resided before his death, will have jurisdiction of the settlement of his estate.

*"The principle clearly deducible from these different decisions is, that where there has been a change of legislation as to the parish in which the succession shall be considered as opened by the death of the party, his death will be regarded as irrevocably vesting the jurisdiction,* but that where a parish has been divided afterwards, then it will depend upon the fact, whether the court of the original parish had taken any steps, or assumed jurisdiction in relation to the mortuaria—if so, its jurisdiction is not divested by the change, otherwise it will belong to that of the two parishes which embraced the residence of the deceased." (Italics ours.)

· In the case at bar, the defendants admit that Francois Gonsoulin died in the parish of St. Martin in the year 1819 and that his succession was judicially opened in that parish upon the petition of his surviving widow on April 16, 1823. Therefore, the court of that parish had taken

steps or assumed jurisdiction in relation to the mortuaria prior to the revision of the Civil Code in 1825.

But counsel for defendants urge and seriously argue that the court in this instance had jurisdiction on the ground that sections 8 and 9 of Act No. 208 of 1868, creating the parish of Iberia, provided for the transferring of the records of the old parish involving matters within the jurisdiction of the new parish and in support thereof, rely on the case of Grevemberg v. Bradford, 44 La.Ann. 400, .10 So. 786, 789.

In the Grevemberg Case, supra, the question of jurisdiction ratione materiae was raised as in this case. In interpreting section 9 of the act creating the parish of Lafayette (1823), which reads "that as soon after the said parish of Lafayette shall be established * * * it shall be the duty of the clerk of the court of the parish of St. Martin to transmit to the clerk of the court of the parish of Lafayette all the papers, documents, *and other judicial proceedings unfinished,* which may be in his office, and which, from the residence of the defendant and the situation of the parties, belong to the parish created by this act," the court said:

"It is evident that, from a fair and reasonable interpretation of this section of the act, unfinished and incomplete mortuary proceedings were contemplated by the term 'other judicial proceedings unfinished;' and it seems quite clear that such unfinished and incomplete mortuary proceedings, in the courts of the parish of St. Martin, as those in which persons who were domiciled in the new parish might have an interest, were contemplated by the phrase 'from the situation of the parties, belong to the parish created by this act.' "

Sections 8 and 9 of Act No. 208 of 1868, creating the parish of Iberia, which counsel contend is the same as section 9 of the act of 1823 creating the parish of Lafayette, read as follows:

"Sec. 8. * * * · That it shall be the duty of the clerks of the district and parish courts of the parishes of St. Mary and St. Martin to transmit to the clerks of the district and parish courts of the parish of Iberia, all petitions, answers, documents and papers *appertaining to suits wherein the defendant or defendants reside within the parish of Iberia.* (Italics ours.)

"Sec. 9. * * * That immediately after the passage of this act it shall be the duty of the recorders of the parishes of St. Mary and St. Martin to make a true copy of the records of all acts, deeds and titles, papers of record in their respective offices, relative to or affecting landed property situated within the limits of the parish of Iberia, which the said recorders· shall cause to be transcribed in a well bound book or books, paraphed ne varietur at the top and foot of each page, accompanied by a certificate at the end of each book, with the seal of the said recorders affixed to the end of their respective book or books, all of which shall be made, *and with the original acts and title deeds be transmitted by the said recorders respectively to the recorder of the parish of*

*Iberia, at the expense of the parish of Iberia."* (Italics ours.)

Thus it may be seen that section 8 of the act specifically provides for transferring from the parishes of St. Mary and St. Martin to the parish of Iberia, all petitions, answers, documents, and papers *"appertaining to suits wherein the defendant or defendants reside within the Parish of Iberia,"* and section 9 provides "that a true copy of the records of all acts, deeds and titles * * * relative to or affecting landed property situated within the limits of the parish of Iberia * * *" be transcribed in a book, etc., which together *"with the original acts and title deeds"* were ordered transmitted to the recorder of the parish of Iberia. (Italics ours.)

The legislators failed to provide for the transfer of the mortuary proceedings from the old parishes to the new and therefore evidently intended that the jurisdiction of mortuary proceedings remain as then existed by law and the jurisprudence of this state.

The court, in the Grevemberg Case, supra, in commenting on the jurisprudence on that point, 44 La.Ann. 400, at page 416, 10 So. 786, 789, had this to say:

"The legislature of 1823 was fully competent to deal with the question in hand, and no one doubts its constitutional authority to thus alter and change the jurisdiction of courts, so as to transfer 'judicial proceedings unfinished' into the courts of the territory in which the litigants were to reside thereafter, and which 'from the situation of the parties belongs to the parish thus created.'

"This identical question arose and was decided in the case of Beale v. Walden, 11 Rob. (La.) [67] 68, the controversy being whether the probate court of the parish of Jefferson had jurisdiction to order a sale of property therein situated at the time, though previously forming a part of the territory of the parish of Orleans, from which the parish of Jefferson had been taken, and wherein the succession of the deceased had been opened, and upon the authority of two previous decisions (Patouillet v. Patouillet, 2 La. 270, and Forstall v. Forstall, 4 La. 214) the court said:

" 'The succession of Thomas Beale, Sr., was opened, in a legal sense, by his death, which took place in the parish of Orleans before its division. If the court of probates had already taken cognizance before the parish of Jefferson was cut off, its jurisdiction was not divested by the separation.'

"That case would appear to be conclusively in favor of the plaintiffs, if it be conceded that Euphrosine Boisdore's succession was once under administration in the parish of St. Martin antecedent to 1823; and indeed it would be, but for the fact that is stated by the court, that the act of February, 1825, creating the parish of Jefferson, does not contain any 'provision relating to a transfer of causes pending in the courts of the parish of Orleans to those of the new parish, nor relative to administration of successions already opened before the separation of the two parishes.' " (Italics ours.)

In the same case, this court said:

"Of the testimony it may be fairly said that it leads to the inference of Euphrosine Boisdore having resided and died in the parish of St. Martin, *but it does not prove it fully, nor does it clearly establish the fact that an actual administration of her estate was ever commenced in that parish. Much less does it prove the commencement and termination thereof in that parish by an acceptance by the heirs of the deceased, or otherwise.*" (Italics ours.)

In the instant case it is an undisputed fact that Francois Gonsoulin died in the parish of St. Martin during September, 1819, and that his succession was judicially opened there on April 16, 1823. Thus it may be seen that under the law then in existence, his succession had been opened by his death in 1819 and the court of the parish of St. Martin had assumed jurisdiction in relation to the mortuaria prior to the revision of the Code of 1825 and forty-six years before the creation of the parish of Iberia.

It is also an admitted fact that Mrs. Francois Gonsoulin died in the parish of St. Martin in the year 1830, but that her estate was never formally opened to probate. It is plaintiffs' contention, however, that her succession, as well as that of her husband, Francois Gonsoulin, were expressly and unconditionally accepted by their heirs in 1854 when they effected a sale of a part of their ancestors' estate to pay debts and divided the remainder of the proceeds of the sale among themselves, as well as by their many other acts and judicial declarations hereinbefore mentioned, and particularly their suit filed against the Gulf Company.

On that subject articles 988 and 1002 of the Revised Civil Code provide:

"988. The simple acceptance may be either express or tacit. It is express, when the heir assumes the quality of heir in an unqualified manner, in some authentic or private instrument, or in some judicial proceeding. It is tacit, when some act is done by the heir, which necessarily supposes his intention to accept, and which he would have no right to do but in his quality of heir."

"1002. The donation, sale or assignment, which one of the coheirs makes of rights of inheritance, either to a stranger or to his coheirs, is considered to be, on his part, an acceptance of the inheritance."

In the case of Brashear v. Conner, 29 La.Ann. 347, 349, the court held, as is well expressed in the syllabus, that:

"Where the heirs are all of age, and present, and represented, and have accepted the succession purely and simply, and there are no debts due by the succession, there is no necessity for the appointment of an administrator."

In the course of the opinion, this court said:

"There was really no succession to open after the proceeding to annul and set aside the will and the judgment annulling it; for as we have already seen that proceeding was instituted and conducted by Mrs. Conner in her quality of heir, and in it she alleged that the sole heirs are John J. Osborne, who has sold and transferred

all his rights in said estate to his sister, Mrs. Brashear, who is the remaining heir, and who appeared in that proceeding as well as the present litigation, and is alleged to be in possession of the property. *From that time there was no succession to administer, and the heirs who accepted purely and simply represented the deceased both as to his rights and obligations. The heir who accepts is considered as having succeeded to the deceased from the moment of his death. R.C.C., article 947. He is of full right in place of deceased, as well for his rights as his obligations. R.C.C. 945. All that remained was to partition the property between the heirs. Under such circumstances the property is vested in the heirs, and not in the succession.* Samford v. Toadvine, 15 La.Ann. 170; Succession of Story, 3 La.Ann. 502." (Italics ours.)

In the case of Foster v. Spann, 170 La. 1019, 129 So. 622, 626, the Brashear Case, supra, was cited with approval as follows:

*"The institution of a suit claiming title to property by inheritance from a deceased person is an unconditional acceptance of his succession."* Griffing v. Taft, 151 La. 442, 452, 91 So. 832, 836; Rev.Civ. Code, art. 988; McQueen v. Sandel, 15 La.Ann. 140; Brashear v. Conner, 29 La. Ann. 347; Sevier v. Gordon, 29 La.Ann. 440; McCall v. Irion, 41 La.Ann. 1126, 6 So. 845; Heirs of Ledoux v. Lavedan, on rehearing, 52 La.Ann. 334, 27 So. 205. (Italics ours.) See, also, Succession of Aronstein, 51 La.Ann. 1052, 25 So. 932, and Decuir v. Decuir, supra.

We are of the opinion that the surviving widow and heirs of Francois Gonsoulin in having instituted a petitory action against Walter Brashear in 1823, they thereby assumed the quality of heirs in an unqualified manner which constituted an acceptance, pure and simple, of the succession of Francois Gonsoulin. Likewise, in 1854, when the heirs of Francois Gonsoulin and his wife sold property formerly belonging to their ancestors to pay debts of their successions and to effect a partition, this proceeding and action constituted an unqualified acceptance of the succession of their ancestors, and "under such circumstances the property is vested in the heirs and not in the succession." In 1898 the heirs of Clair St. Clair Gonsoulin, who is alleged to have died in the year 1861, having joined the heirs of the predeceased brothers and sisters of Clair St. Clair Gonsoulin, in their capacity as such and as legal heirs of Francois Gonsoulin and his wife, in a petition filed against the Gulf Company, claiming title to Belle Isle, and they having made judicial declarations therein that their ancestors' successions owed no debts and that they accepted the same unconditionally, and that after the termination of the suit, having executed a notarial act of sale to David Todd and Branch K. Miller, their attorneys, to an undivided interest in and to the property inherited by them from the successions of their ancestors, leaves no doubt in our minds as to the unconditional acceptance by the heirs of the successions of Francois Gonsoulin and his wife and of Clair St. Clair Gonsoulin, and

as a result thereof the property became vested in the heirs and from that time there was no succession to administer.

◼ We therefore conclude that the court in and for the parish of Iberia was without jurisdiction ratione materiae over the successions of Francois Gonsoulin, of his wife, Marie Louise Celeste de la Gautrais, and of Clair St. Clair Gonsoulin, and all proceedings had in that court with reference thereto are absolutely nullities and are of no effect.

The next question for our consideration is the effect of the monition proceedings in the instant case.

This court, in construing the monition act of 1834 (p. 125) incorporated in Revised Statutes as sections 2370 to 2377, inclusive, in the case of Kent v. Brown & Learned, 38 La.Ann. 802, said:

"The avowed object of the legislation which created the remedy of monition was to cure at once, and without the lapse of time required by the term of prescription provided for in Article 3543 of the Civil Code, the same informalities or defects which have always disappeared under that plea of prescription."

◼ Since the object of monition proceedings is to cure relative nullities, we are powerless to extend it to affect absolute nullities, and the monition proceedings filed by Adrien Gonsoulin and Mrs. Alice G. Miller are, therefore, of no effect.

As to the parties plaintiff herein, who were also parties plaintiff in the cases of Gravet v. Gonsoulin et al., 10 La.App. 553, 119 So. 785, 120 So. 643, and Vuillemot et al. v. Gonsulin, 17 La.App. 661, 134 So 419, in order to determine whether the plea of res adjudicata is good as to them, it will be necessary to determine "the object of the thing adjudged" in those cases.

◼ It is the settled jurisprudence of this court that "matters once determined never again be called in question by parties or privies." Heroman et al. v. Louisiana Institute et al., 34 La.Ann. 805, 814; McNeely v. Hyde, 46 La.Ann. 1083, 15 So. 167. "The authority of the thing adjudged must be tested by the requisites of article 2286 of the Civil Code." Semple v. Scarborough, 44 La.Ann. 257, 10 So. 860.

Article 2286 of the Revised Civil Code reads as follows: "The authority of the thing adjudged takes place only with respect to what was the object of the judgment. The thing demanded must be the same; the demand must be founded on the same cause of action; the demand must be between the same parties, and formed by them against each other in the same quality."

An examination of the pleadings in the Gravet and Vuillemot Cases shows that "the object of the thing adjudged" in those two cases is not the same as in the case at bar. Reference to the prayers of the petitions will show that the object of each suit was to set aside the proceedings in the successions of Francois Gonsoulin and his wife, bearing No. 2095 of the probate

court of the parish of Iberia, while the present suit is a petitory action.

But in the case of Heroman v. Louisiana Institute, supra, it was held that a decision upon the issues involved by a competent court operates as a conclusive estoppel between the parties before the court. Moreover, in the opinion it was stated that "the estoppel extends to every material obligation or statement which, having been made on one side and denied on the other, was at issue in the cause, and was determined therein."

We therefore conclude that the judgments in the case of Mrs. Dorcienne G. Gravet v. Adrien Gonsoulin et al., supra, and of Mrs. Annette Durand Vuillemot et al. v. Adrien Gonsulin et al., supra, are binding on the respective parties thereto and operate as a complete bar to plaintiffs herein who were also parties plaintiff in said suits from further contesting the validity of the proceedings in the succession of Francois Gonsoulin and his wife, Marie Louise Celeste de la Gautrais, No. 2095 of the probate docket of the parish of Iberia.

We shall now take up the pleas of prescription of one, five, and ten years filed by the defendants.

The prescription of one year is predicated on article 613 of the Code of Practice. This article fixes the limitation for the institution of suits to annul judgments obtained through fraud on the part of the plaintiff or because the defendant had lost or mislaid the receipt given to him by the plaintiff and, therefore, has no relation to

the case at bar. The plea of five years' prescription, being based on article 3543 of the Revised Civil Code, is not well founded because it is intended to cure *informalities only* and not *absolute nullities*. Neither is the prescription of ten years applicable (article 3474), first, because the defendants herein purchased the property and took possession thereof less than ten years before this suit was filed, and, second, because their authors in title were in fact without a deed translative of title, and hence, that period of time cannot be added to the time defendants had possession.

The exceptions of no right or cause of action filed by the defendants, according to their counsel's brief, are based on the fact that the plaintiffs attached to their second supplemental petition the petition of Frank P. Davis in his suit against Mrs. Branch K. Miller et al. wherein it is alleged that Frank P. Davis, together with the defendants in that suit (none of whom are the plaintiffs herein), were the sole owners of the property in controversy, and the plaintiffs, having annexed that petition to their supplemental petition, have alleged themselves out of court because it is virtually admitting that plaintiffs have no interest in the property. An examination of the pleadings in this case conclusively shows that plaintiffs averred the incorrectness of that portion of the petition and the exceptions of no cause or right of action on that ground are, therefore, without merit.

The plaintiffs having alleged that the heirs of Francois Gonsoulin and of his

wife, Marie Louise Celeste de la Gautrais, and of Clair St. Clair Gonsoulin, conveyed to their attorneys, David Todd and Branch K. Miller, an undivided one-twelfth interest in and to the property in controversy, therefore, to that extent the exceptions of no cause or right of action must be maintained.

For the reasons assigned, the judgment of the lower court is set aside and it is now ordered, adjudged, and decreed that there be judgment, maintaining the exceptions of no cause or right of action in so far as the one-twelfth interest conveyed by the heirs of Clair St. Clair Gonsoulin, and of Francois Gonsoulin and his wife, Mrs. Marie Louise Celeste de la Gautrais, to David Todd and Branch K. Miller is concerned; the plea of estoppel filed by the defendants, in so far as the parties plaintiff who were also parties plaintiff in the case of Gravet v. Gonsoulin et al., 10 La.App. 553, 119 So. 785, 120 So. 643, and in the case of Vuillemot et al. v. Gonsulin et al., 17 La.App. 661, 134 So. 419, are concerned, is sustained; in all other respects the exceptions of no cause or right of action, the plea of res adjudicata, estoppel, acquiescence, staleness, and prescription are overruled, and the case remanded to the lower court to be proceeded with according to law and consistent with the views herein expressed; costs of this court to be paid by the defendants and appellees, all other costs to await the final outcome of this suit.

O'NIELL, C. J., absent.